# ROBERT C. HERD & CO., INC., *v.* KRAWILL MACHINERY CORP. ET AL.

No. 276.   Argued February 26, 1959.—
Decided April 20, 1959.

*George W. P. Whip* argued the cause for petitioner. With him on the brief was *Robert E. Coughlan, Jr.*

*William A. Grimes* argued the cause for respondents. With him on the brief was *Leslie W. Fleming.*

*Harold M. Kennedy* filed a brief for the National Association of Stevedores, as *amicus curiae,* urging reversal.

*Henry N. Longley* and *F. Herbert Prem* filed a brief for the American Institute of Marine Underwriters, as *amicus curiae,* urging affirmance.

Mr. Justice Whittaker delivered the opinion of the Court.

The question presented by this case is whether the provisions of § 4 (5) of the Carriage of Goods by Sea Act (46. U. S. C. § 1304 (5)) or the parallel provisions of an ocean bill of lading, limiting the liability of an ocean "carrier" to a shipper to $500 per package of cargo, also apply to and likewise limit the liability of a negligent stevedore.

Respondents, having sold and agreed to deliver certain goods to a Spanish company, arranged for their ocean carriage on the S. S. *Castillo Ampudia* from Baltimore, Maryland, to Valencia, Spain. The goods, consisting of 62 cases, were transported from Detroit by flatcar to a point on the Baltimore pier alongside the S. S. *Castillo Ampudia* and were there taken in charge by her agent for loading and shipment. A bill of lading was prepared by respondents, on forms of the carrier, and was submitted to and signed by an agent of the carrier. The value of the goods was not declared by respondents or inserted in the bill of lading.

Petitioner, an independent stevedoring company, was orally engaged by the carrier to load the cargo aboard the ship, and while endeavoring to load one of the cases, containing a press weighing 19 tons, petitioner's employees caused it to fall into the harbor and to be extensively damaged. Respondents then brought this tort action in the United States District Court against petitioner to recover their damages which they alleged had been caused by petitioner's negligence. Petitioner's answer denied the allegations of negligence, and asserted, alternatively, that if the damage was caused by its negligence its liability was limited to $500 by the limitation-of-liability provisions of the Carriage of Goods

by Sea Act [1] and by the parallel provisions of the bill of lading. [2]

After trial, the District Court held that the damage to the press was caused by petitioner's negligence; that the limitation-of-liability provisions of the bill of lading were, in express terms, applicable only to the carrier, and did not apply to nor limit the liability of the stevedore; [3] and that

---

[1] The limitation-of-liability provisions of the Carriage of Goods by Sea Act appear in 46 U. S. C. § 1304 (5), which, so far as pertinent, provides:

(5) "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading."

[2] The parallel limitation-of-liability provisions contained in the bill of lading are found in §§ 30 and 37 thereof which, so far as pertinent, provide:

"30. In consideration of a choice of freight rates having been offered to the shipper by the Carrier, it is agreed that in case of loss of, or damage to . . . goods of an actual value exceeding $500 . . . per package . . . the value of such goods, shall be deemed to be $500 per package . . . and the Carrier's liability, if any, shall be determined on the basis of a value of $500 per package . . . unless the nature of such goods and a value higher than $500 per package . . . shall have been declared in writing by the shipper upon delivery to the Carrier and noted on the face hereof and unless payment of the extra freight charge incident thereto shall have been made or promised . . . , in which case such declared value, or the actual value if less, shall be the basis for computing damages and any partial loss or damage shall be adjusted pro rata. . . ."

"37. This bill of lading shall have effect subject to the Carriage of Goods by Sea Act of the U. S. A. and the Carrier and the ship shall be entitled to all of the rights and immunities set forth in said Act."

[3] 46 U. S. C. § 1301 (e) provides: "The term 'carriage of goods' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship." The district

respondents were entitled to recover the full amount of their damages from petitioner (145 F. Supp. 554). It accordingly rendered judgment for respondents in the amount of $47,992.04 (155 F. Supp. 296). On appeal, the Court of Appeals unanimously affirmed on the question here presented. 256 F. 2d 946. It held that neither the limitation-of-liability provisions of the Carriage of Goods by Sea Act [4] (Note 1) nor of the bill of lading (Note 2) were applicable to, or limited the liability of, the stevedoring company, and that it was therefore liable for the full damage caused by its negligence. The court expressly disagreed with and declined to follow the majority opinion of the Fifth Circuit in *A. M. Collins & Co. v. Panama R. Co.*, 197 F. 2d 893, saying that it thought the dissenting opinion in that case presented the correct view. The question being of importance to the shipping industry, we granted certiorari to resolve this conflict. 358 U. S. 812.

Petitioner's contentions are twofold. First, it contends that the liability-limiting provisions of the Carriage of Goods by Sea Act and of the bill of lading should be construed to limit its liability as well as that of the carrier. Second, it contends that even if it be held that those provisions limit only the liability of the "carrier," it is nevertheless protected by the carrier's limitation under the theory and holding of the majority opinion in the *Collins* case.

---

judge was of the view that the casualty occurred before the press had been "loaded on" the ship, and that therefore the Carriage of Goods by Sea Act was not applicable because its effective period had not begun.

[4] The court held that inasmuch as nothing in the Act purports to limit the liability of a stevedore, there was no need to review the holding of the District Court that its effective period had not begun. See Note 3.

With regard to petitioner's first contention, we look first to the provisions, legislative history and environment of the Carriage of Goods by Sea Act, 46 U. S. C. §§ 1300–1315, and next to the limiting provisions of the bill of lading, to determine whether Congress by the Act, or the shippers and the carrier by the bill of lading, evidenced any intention to limit the liability of negligent agents of a carrier.

The Act is clearly phrased. It defines the term "carrier" to include "the owner or the charterer who enters into a contract of carriage with the shipper." § 1301 (a). It imposes particularized duties and obligations upon, and grants stated immunities to, the "carrier." §§ 1302, 1303, 1304. Respecting limitation of the amount of liability for loss of or damage to goods, it says that "neither the carrier nor the ship" shall be liable for more than $500 per package. § 1304 (5). It makes no reference whatever to stevedores or agents. The legislative history of the Act shows that it was lifted almost bodily from the Hague Rules of 1921, as amended by the Brussels Convention of 1924, 51 Stat. 233.[5] The effort of those Rules was to establish uniform ocean bills of lading to govern the rights and liabilities of carriers and shippers *inter se* in international trade. *Ibid.* Those Rules do not advert to stevedores or agents of a carrier. The debates and Committee Reports in the Senate and the House upon the bill that became the Carriage of Goods by Sea Act likewise do not mention stevedores or agents.[6] There is, thus, nothing in the language, the legislative history

---

[5] The Hague Rules as amended by the Brussels Convention were, in turn, based in part upon the pioneering Harter Act of 1893, 27 Stat. 445, 46 U. S. C. §§ 190–196. See H. R. Rep. No. 2218, 74th Cong., 2d Sess. 7.

[6] S. Rep. No. 742, 74th Cong., 1st Sess.; H. R. Rep. No. 2218, 74th Cong., 2d Sess.

or environment of the Act that expressly or impliedly indicates any intention of Congress to regulate stevedores or other agents of a carrier, or to limit the amount of their liability for damages caused by their negligence.   It must be assumed that Congress knew that generally agents are liable for all damages caused by their negligence.   Yet Congress, while limiting the amount of liability of "the carrier [and] the ship," did not even refer to stevedores or agents of a carrier.   "We can only conclude that if Congress had intended to make such an inroad on the rights of claimants [against negligent agents] it would have said so in unambiguous terms" and "in the absence of a clear Congressional policy to that end, we cannot go so far."   *Brady* v. *Roosevelt S. S. Co.,* 317 U. S. 575, 581, 584.

Looking to the limitation-of-liability provisions of the bill of lading, we see that they, like § 1304 (5) of the Act and its legislative history, do not advert to stevedores or agents.   Instead they deal only with the "Carrier's liability" to the shippers.   They say that "the Carrier's liability, if any, shall be determined on the basis of $500 per package."   There is, thus, nothing in those provisions to indicate that the contracting parties intended to limit the liability of stevedores or other agents of the carrier for damages caused by their negligence.   If such had been a purpose of the contracting parties it must be presumed that they would in some way have expressed it in the contract.   Since they did not do so, it follows that the provisions of the bill of lading did "not cut off [respondent's] remedy against the agent that did the wrongful act."   *Sloan Shipyards Corp.* v. *Emergency Fleet Corp.,* 258 U. S. 549, 568.

We therefore conclude that there is nothing in the provisions, legislative history and environment of the Act, or in the limitation-of-liability provisions of the bill of lading, to indicate any intention, of Congress by the Act,

or of the contracting parties by the bill of lading, to limit the liability of negligent agents of the carrier.

We now turn to petitioner's second contention that even if, as we hold, the Act and the bill of lading granted limitation of liability only to the "carrier," petitioner is nevertheless protected by the carrier's limitation under the theory and holding of the majority opinion in the *Collins* case. The premise of the majority opinion in that case is that all agents of the carrier who perform any part of the work undertaken by the carrier in the contract of carriage, evidenced by the bill of lading, are, by reason of that fact alone, protected by the provisions of the contract limiting the liability of the carrier, though such agents are not parties to nor express beneficiaries of the contract. Applying that theory in accordingly limiting the liability of a negligent stevedore, the majority said:

> "A stevedore so unloading, in every practical sense, does so by virtue of the bill of lading and, though not strictly speaking a party thereto, is, while liable as an agent for its own negligence, at the same time entitled to claim the limitation of liability provided by the bill of lading to the furtherance of the terms of which its operations are directed." 197 F. 2d, at 896.

We are unable to agree with that conclusion, for we think it runs counter to a long-settled line of decisions of this Court. From its early history this Court has consistently held that an agent is liable for all damages caused by his negligence, unless exonerated therefrom, in whole or in part, by a statute or a valid contract binding on the person damaged. In *Osborn* v. *Bank of the United States,* 9 Wheat. 738, 843, it was said that an agent "is responsible for his own act to the full extent of the injury [caused thereby]." In *Reid* v. *Fargo,* 241 U. S. 544, this Court held, on facts very similar to those

here, that, though the carrier's liability was limited by the bill of lading to $100, the negligent agent, a stevedoring company, was liable to the shipper for the full amount of damage caused by its negligence.[7] In *Sloan Shipyards Corp.* v. *Emergency Fleet Corp.,* 258 U. S., at 567, it was said that an "agent, because he is agent, does not cease to be answerable for his acts." In *Brady* v. *Roosevelt S. S. Co.,* 317 U. S., at 580–581, this Court said that "The liability of an agent for his own negligence has long been embedded in the law," that "withdrawal of the right to sue the agent for his torts would result at times in a substantial dilution of the rights of claimants," and that withdrawal of that right would be "such a basic change in one of the fundamentals of the law of agency [as] should hardly be left to conjecture." This Court has several times held that an agent's only shield from liability "for conduct harmful to the plaintiff . . . is a constitutional rule of law that exonerates him." *Sloan Shipyards Corp.* v. *Emergency Fleet Corp.,* 258 U. S., at 567; *Brady* v. *Roosevelt S. S. Co.,* 317 U. S., at 584. Any such rule of law, being in derogation of the common law, must be strictly construed, for "[n]o statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any inno-

---

[7] Though the *Reid* case involved very similar facts, we do not consider that it alone is dispositive of this case because it does not clearly enough appear that the negligent stevedore specifically raised, or that this Court actually decided, the question whether the negligent stevedore was entitled to invoke the limitation of liability given by the shipper to the carrier in the bill of lading. However, it would seem that there is some basis for respondents' argument that the members of the Bar understood that case to hold that the stevedore was not so entitled, for that principle does not appear to have been challenged in any reported American opinion during the 36 years between the decision of the *Reid* case in 1916 and the decision of the *Collins* case in 1952.

vation upon the common law which it does not fairly express." *Shaw* v. *Railroad Co.*, 101 U. S. 557, 565; see *Texas & Pacific R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 437. Similarly, contracts purporting to grant immunity from, or limitation of, liability must be strictly construed and limited to intended beneficiaries, for they "are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, unless the clarity of the language used expresses such to be the understanding of the contracting parties." *Boston Metals Co.* v. *The Winding Gulf*, 349 U. S. 122, 123–124 (concurring opinion).

The holding of the majority in *Collins* that the liability of a negligent agent of a carrier, though not limited by any statute or contract, is nevertheless limited by and to the extent of the limitation granted by the shipper to the carrier in the bill of lading, simply because the agent is performing some part of the work thereby undertaken by the carrier, is clearly contrary to the above-cited decisions of this Court.[8]

---

[8] Apart from the disapproving opinions of the District Court (145 F. Supp. 554) and of the Court of Appeals (256 F. 2d 946) in this case, the *Collins* case has been cited three times in the present context, twice approvingly and once disapprovingly, and seven times in somewhat different contexts.

It was first cited approvingly in *Ford Motor Co.* v. *Jarka Corp.*, 134 N. Y. S. 2d 52 (Mun. Ct. of New York City), where the court, relying on *Collins* and two New South Wales cases, *Waters Trading Co., Ltd.*, v. *Dalgety & Co., Ltd.*, [1951] 2 Ll. L. Rep. 385, and *Gilbert Stokes & Kerr, Prop., Ltd.*, v. *Dalgety & Co., Ltd.*, 81 Ll. L. Rep. 337, held that a covenant in a bill of lading limiting the liability of the carrier to $500 per package likewise limited the liability of a negligent stevedoring company, which was not a party to nor an express beneficiary of the bill of lading. However the two New South Wales cases relied on by the court have recently been overruled by the High Court of Australia in *Wilson* v. *Darling Island Stevedoring*

Petitioner claims that its position is supported by the decision of the House of Lords in *Elder, Dempster & Co., Ltd.,* v. *Paterson, Zochonis & Co., Ltd.,* [1924] A. C. 522, 18 Ll. L. Rep. 319. There, Elder, Dempster & Co. had chartered a ship, on time charter, from the shipowners. The plaintiff company shipped a number of casks of palm oil by that ship from West African ports to England. The casks were crushed by other cargo negligently laid over them, and a large part of the oil was lost. The bill of lading contained a clause which, so far as here pertinent, provided that "The shipowners . . . shall not be liable . . . for . . . any damage arising from . . . stowage. . . . The plaintiff company sued both the char-

---

*& Lighterage Co., Ltd.,* [1956] 1 Ll. L. Rep. 346, [1956] Argus Law Rep. 311, 29 Austral. L. J. 740.

It was next cited approvingly in *Autobuses Modernos, S. A.,* v. *The Federal Mariner,* 125 F. Supp. 780 (D. C. E. D. Pa.). The court held, citing *Collins,* that a stevedoring company whose negligence in loading cargo joined with that of the carrier to cause damage to the cargo was entitled to the benefits of the $500 limitation given to the carrier in the bill of lading.

It was cited disapprovingly in *International Milling Co.* v. *The Perseus,* [1958] A. M. C. 526 (D. C. E. D. Mich.). The court held that the negligent master of a ship was not entitled to invoke the limitation of liability given by the shipper to the carrier in the contract of carriage, saying that it was "unable to agree with the reasoning of the majority of the court in the *Collins* case." [1958] A. M. C., at 529.

The opinions in which the *Collins* case has been cited in different contexts are *United States* v. *The South Star,* 210 F. 2d 44 (C. A. 2d Cir.); *J. B. Effenson Co.* v. *Three Bays Corp.,* 238 F. 2d 611 (C. A. 5th Cir.); *Twentieth Century Delivery Service, Inc.,* v. *St. Paul Fire & Marine Ins. Co.,* 242 F. 2d 292 (C. A. 9th Cir.); *Van Camp Sea Food Co.* v. *Pacific-Atlantic S. S. Co.,* 122 F. Supp. 163 (D. C. E. D. Pa.); *Chutter* v. *KLM Royal Dutch Airlines,* 132 F. Supp. 611 (D. C. S. D. N. Y.); *National Federation of Coffee Growers of Colombia* v. *Isbrandtsen Co.,* [1957] A. M. C. 1571 (Sup. Ct. N. Y.); *Berger* v. *34th Street Garage,* 3 N. Y. 2d 701, 148 N. E. 2d 883.

terer and the shipowners. The principal question was whether the damage was caused by unseaworthiness (which was not within the exemption clause) or by bad stowage (which was within that clause). The House of Lords decided that the loss was due to bad stowage and held, but for differing reasons, that the exemption clause applied to and protected both the charterer and the shipowners.

A careful reading of the several lengthy opinions of their lordships in that case discloses that the question whether a provision in the bill of lading limiting the liability of the carrier likewise limits the liability of its negligent agent, though the agent is neither a party to nor an express beneficiary of the bill of lading, was not involved in or decided by that case. Nor has any English case ever held that a bill of lading that expressly limits the liability of only the carrier nevertheless applies to and limits the liability of its negligent agent. See Scrutton, Charterparties (16th ed. 1955), 286–287, note (g). It is true that in *Gilbert Stokes & Kerr, Prop., Ltd.,* v. *Dalgety & Co., Ltd.,* 81 Ll. L. Rep. 337 (1948), and *Waters Trading Co., Ltd.,* v. *Dalgety & Co., Ltd.,* [1951] 2 Ll. L. Rep. 385, the Supreme Court of New South Wales held that stevedores, who negligently performed a part of the work undertaken by the carrier in the bill of lading, were entitled to the limitation of liability given to the carrier by the limiting provisions of the bill of lading, though the stevedores were neither parties to nor express beneficiaries of the bill of lading. However, in *Wilson* v. *Darling Island Stevedoring & Lighterage Co., Ltd.,* [1956] 1 Ll. L. Rep. 346, [1956] Argus Law Rep. 311, 29 Austral. L. J. 740—an appeal involving facts indistinguishable from those involved in the two New South Wales cases, which was prosecuted for the avowed purpose of challenging the correctness of those decisions—the High Court of Australia, after extensively reviewing the *Elder, Dempster*

case and many other English decisions, found that there was no English case that supported the two New South Wales decisions mentioned, and it held that they were wrongly decided and overruled them, saying:

> "The stevedore is a complete stranger to the contract of carriage, and it is no concern of his whether there is a bill of lading or not, or, if there is, what are its terms. He is engaged by the shipowner and by nobody else, and the terms on which he handles the goods are to be found in his contract with the shipowner and nowhere else. The shipowner has no authority whatever to bind the shipper or consignee of cargo by contract with the stevedore, and there is, in my opinion, no principle of law—deducible from the *Elder Dempster Case* or from any other case—which compels the inference of any contract between the shipper or consignee and the stevedore. If the stevedore negligently soaks cargo with water and ruins it, I can find neither rule of law nor contract to save him from the normal consequences of his tort." Opinion of Fullager, J., 29 Austral. L. J., at 751.

Under the common law as declared by this Court, petitioner was liable for all damages caused by its negligence unless exonerated therefrom, in whole or in part, by a constitutional rule of law. No statute has limited its liability, and it was not a party to nor a beneficiary of the contract of carriage between the shipper and the carrier, and hence its liability was not limited by that contract. It follows that petitioner's common-law liability for damages caused by its negligence was in no way limited, and the judgment below so holding was correct and must be

*Affirmed.*