**SOUTHERN STEVEDORING COMPANY, Inc.**

v.

**S.S. HELLENIC WAVE et al.**

Civ. A. No. 67–H–860.

United States District Court,
S. D. Texas,
Houston Division.
March 23, 1970.

Hinds & Meyer, John K. Meyer, Houston, Tex., for plaintiff.

Royston, Rayzor & Cook, C. D. Kennedy, Houston, Tex., for defendants.

MEMORANDUM:

CONNALLY, Chief Judge.

This is an action by a stevedore to recover the balance due from a vessel and her owners for stevedoring services. Southern Stevedoring Company, Inc. ("Stevedore" hereafter) is the plaintiff. The S.S. HELLENIC WAVE and her owners, Hellenic Lines, Ltd., are the defendants. As noted hereafter, in the final analysis the real controversy is over the responsibility for damage to certain cargo which was suffered in the course of loading the S.S. GRIGORIS C III, at the Port of Houston, on June 2, 1964.

The facts giving rise to the controversy I find to be as follows. In 1960 Stevedore entered into a written contract with Hellenic Lines to perform stevedoring services on the latter's vessels in Houston and other Gulf ports. This business thereafter was substantial, including the loading or unloading of some three or four vessels per month at the Port of Houston. The relations between the parties appear to have been reasonably harmonious, although Hellenic was slow to pay its bills and was always indebted to Stevedore for services performed on various vessels. The contract was terminated at Stevedore's instance in September, 1964, primarily because of this circumstance.

At the time of termination, Hellenic was indebted to Stevedore for past services rendered in the amount of some $33,000 to 35,000. In April, 1965, Harris, President of Stevedore, made a trip to New York to visit the office of Hellenic in an effort to secure his money, which was past due. The various invoices which Stevedore had submitted were considered and discussed between Harris and Lytrias, an executive officer of Hellenic, a few minor adjustments were made, and agreement was reached as to the amount due under such invoices. Hellenic paid Stevedore some $26,000 at that time, but refused to pay an invoice in the amount of approximately $8,000 because of the cargo damage as hereafter discussed, for which Hellenic contended Stevedore was liable. The amount of the damage to the cargo at that time was not accurately known, but Hellenic suggested it would be something less than the $8,000 amount which was withheld.

Ultimately Hellenic paid the owner of the cargo (Getty Oil Company, one of its better customers) the sum of $4,797.40, the amount of the shipper's expense in repairing the cargo damage. Hellenic also suffered an additional expense item of $610.30 by reason of damage to the vessel, to other cargo, etc., as result of the accident causing the cargo damage. Hellenic finally paid Stevedore the balance of approximately $3,000 due on its outstanding invoice, save for $5,407.70 ($4,797.40 plus $610.30) which it withheld by reason of the accident.

As stated, the accident occurred June 2, 1964, in connection with the loading of the GRIGORIOS C III. A very large and heavy fractionator column had been disassembled and was in several sections. Some two or three of these sections were loaded on deck, but it was the desire of Hellenic's representative that one section (which ultimately was damaged) be lowered into a hold. This section of the column was in the form of a very large pipe which for shipping purposes was closed at both ends. Thus it was a cylinder, with a weight of approximately 21 tons. Its overall length was approximately 34 feet and its diameter approximately 12 feet. Wooden skids were affixed to facilitate handling and stowage. While Stevedore

made some protest at placing the column in the hold, at the insistence of the Hellenic representative it undertook to do so. Unfortunately, the column was slightly longer than the hatch opening into which it was to be lowered. Thus, obviously, the column could not be lowered in a horizontal position. An initial attempt was made to lower the column, using a two-wire sling supporting it at a slight angle. This, however, was insufficient to allow the column to go through the hatch opening. It was placed on deck and a further effort was made, this time using a single wire which was looped around one end of the column, with the intention of lowering it into the hold in an almost vertical position. While this was being done, the wire broke, causing the column to fall into the hold, thus causing damage to the column, as well as minor damage to the vessel and other cargo. The single wire which was being used was relatively new and servicable, but was patently inadequate for the job. It was of a lesser size than that recommended by the manufacturer for lifting a load of this weight, and smaller than prescribed by the safety rules under which Stevedore supposedly was operating. Heavier wire was readily available, and should have been used. I find this loss to have been the fault and responsibility of Stevedore.

Now to revert to additional facts, the relevance of which will soon become apparent. At the time of the meeting between Harris and Lytrias in New York in April, 1965, Harris knew full well that Hellenic contended that Stevedore was at fault with respect to the cargo damage, and expected to withhold the amount thereof from their payments to him. He asked Lytrias how he (Stevedore) would recover the balance of his money. Lytrias replied essentially as follows: "This loss was your fault. You should recover it from your own liability insurance carrier." Thereafter when the final payment of approximately $3,000 was made by Hellenic, the letter of transmittal referred to the fact that

Hellenic previously had made several demands upon Stevedore for payment of the $5,407.70 damage claim; and stated that the enclosed check (being the balance between the amount owed to Stevedore less the $5,407.70) "represents settlement of all outstanding accounts between our two firms."

Thus during the course of the trial the position and the contention of the parties was as follows. The amount of $5,407.70 admittedly was due from Hellenic to Stevedore for services rendered. Hellenic contended it was entitled to offset this identical amount by reason of the cargo damage. While obviously the claim for $4,797.40 of this amount initially belonged to the shipper, it had been paid to the shipper by Hellenic who contended it was entitled to be reimbursed.

Additionally, Hellenic contended that there had been an accord and satisfaction in that having accepted the $3,000 check with the understanding that this "represents settlement of all outstanding accounts between our two firms", Stevedore could not thereafter contend that additional monies were owing. Hence Hellenic contended that it owed nothing.

Stevedore contended that the cargo damage was not the result of its negligence and hence that this was not a legitimate offset. Alternatively, it contended that if it was responsible, it was responsible for no more than $500 of the amount paid by Hellenic to Getty by reason of the provisions of § 4(5) of the Carriage of Goods by Sea Act [46 U.S.C.A. § 1304(5)] limiting the liability of a carrier to a shipper to $500 per package of cargo. Recognizing, as it was obliged to do under Robert C. Herd & Co., Inc. v. Krawill Machinery Corp., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), that this provision was limited in its application to contests between shipper and the carrier, and was one of which the Stevedore might not take advantage, nevertheless, Stevedore contended that in making payment to Getty

Hellenic was obliged to pay no more than $500, arguing that the cargo which was damaged was a single package. Thus it was contended that Hellenic was a volunteer as to any amounts paid in excess of $500, and could not recover more.

There is one additional fact of critical importance to be noted. After the evidence had been concluded and in a discussion of the case with counsel, the Court inquired of counsel for Stevedore as to whether in fact any claim had been made against Stevedore's liability carrier for this loss which the Court had considered to be a result of Stevedore's negligence. Counsel then advised, for the first time, that apparently at the suggestion of Lytrias, Stevedore in fact had asserted a claim. Because it was somewhat unusual for such claim to be asserted by the assured against its own insurer, originally the claim had not been favorably considered. However, during the pendency of this litigation the insurer had reconsidered, and had made full payment of the $5,407.70 to Stevedore, who had pocketed the money. Counsel argued that by reason of that payment—although without notice to the Court or opposing counsel—the liability insurer had automatically become the real plaintiff, and his (counsel's) real client. It was argued that Stevedore, the nominal plaintiff, should recover its amount due under its original invoices, which amount would be repaid to the insurance carrier.

■ On this confused set of facts it is my judgment that the Court should leave these parties where it finds them. Justice has been done, and the loss already has been imposed upon the one which should bear it. Stevedore has received the full amount due for its steve-doring services. Hellenic and the shipper both have been made whole for the cargo damage accident for which they were not to blame. Stevedore's liability insurer has paid this loss, as it should.

■ This disposition leaves certain of the questions presented unanswered. This is so because in my judgment it is not necessary to answer them. If on appeal, however, it be determined that the foregoing is an improper disposition of the matter, I would hold that no accord and satisfaction resulted by reason of Stevedore's having cashed the $3,000 check in light of the provisions of the letter which accompanied it [Choate, Inc. v. Southland Drilling Co., Inc., 447 S.W.2d 676 (Tex.Sup.Ct.1969)]. While there are many Texas cases dealing with the question, and the authorities are by no means consistent, in my judgment the last cited case being the most recent, would control.

■ With respect to the $500 COGSA limitation, I am of the view that Stevedore might not take advantage of such provision and that in making full payment of its loss to Getty, Hellenic was not a volunteer. It is clear under *Herd*, supra, that had Getty sued Stevedore, full recovery would have been allowed. I see no reason for a contrary result when the vessel pays its own shipper and then asserts his cause of action against the stevedore. The stevedore, who was at fault, should not profit at the expense of the vessel, who was not.

For the foregoing reasons the plaintiff is not entitled to recover and the action is dismissed. The foregoing is adopted as Findings of Fact and Conclusions of Law. Clerk will furnish a copy to counsel of record.