669 F.2d 85
 A.C. & LEON ISRAEL COFFEE COMPANY, A DIVISION OF ACLI
INTERNATIONAL INC., Plaintiff,
v.
S.S. "MARIA U", her engines, boilers, etc., Jan C. Uiterwyk
Company, Inc. and Armadora Maritima Salvadorana
S.A. De CV, Defendants, Third Party
Plaintiffs-Appellants,
v.
UNIVERSAL MARITIME SERVICE CORPORATION, Third Party
Defendant-Appellee.
 No. 262 Docket 81-7010.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 12, 1981.
Decided Jan. 18, 1982.
 
 Vincent J. Barra, New York City, (John J. Hession, and Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, on the brief), for defendants, third party plaintiffs-appellants.
 George F. Brammer, Jr., New York City (Grainger & Tesoriero, New York City, on the brief), for third party defendant-appellee.
 Before TIMBERS and KEARSE, Circuit Judges, and MURPHY, District Judge.*
 TIMBERS, Circuit Judge:
 
 
 1
 The essential issue on this appeal is whether appellant charterer and appellant shipowner, on their third-party indemnity claim against appellee stevedore, established at trial a prima facie[1] case as to the total amount of coffee beans which were loaded on a vessel in El Salvador. We hold that they did not. We affirm the judgment of the district court dismissing the third-party claim.
 
 
 2
 The case presents a striking illustration of the responsibilities of a trial judge and trial counsel, respectively, in the adjudication and litigation of a case based primarily on documentary evidence. As will appear below in this opinion, trial counsel not only failed to make clear the purpose for which critical documentary evidence was introduced; they affirmatively misled the trial judge as to its purpose and now invite us on appeal to adjudicate issues which they failed fairly to present to the trial judge. We decline the invitation.
 
 
 3
 Plaintiff in the main action, A.C. & Leon Israel Coffee Co. ("ACLI"), commenced this action in rem against the S.S. Maria U ("Maria U"), against the charterer, Armadora Maritima Salvadorana, S.A. De CV ("Armadora"), and against the owner, Jan C. Uiterwyk Co. ("Uiterwyk") to recover damages for slackage and nondelivery of a consignment of coffee beans. Uiterwyk and Armadora as third-party plaintiffs in turn brought in the stevedore, Universal Maritime Service Corp. ("Universal"), to recover on their claim for indemnification. Defendants in the main action, prior to trial of the third-party claim, settled with ACLI for $60,000. Third-party defendant Universal stipulated to the reasonableness of this settlement.
 
 
 4
 After a bench trial of the third-party claim on September 23 and October 7, 1980 in the Southern District of New York, Lawrence W. Pierce, District Judge, the court, in a reasoned opinion dated May 28, 1981, dismissed the third-party claim and directed that judgment be entered in favor of third-party defendant Universal.
 
 
 5
 From the judgment entered on the court's opinion, this appeal was taken.I.
 
 
 6
 The action arose out of a shipment consisting of a total of 83,310 bags of coffee carried aboard the Maria U from various ports in El Salvador to New York in June and July of 1976. Armadora had chartered the vessel for this voyage from the owner, Uiterwyk. Of the total shipment, 54,560 bags were consigned to ACLI under twenty bills of lading. Virtually the entire cargo consisted of bags of coffee beans destined for New York. There were nine other consignees, none of which was involved in this litigation.
 
 
 7
 The Maria U arrived in New York on July 10, 1976 and tied up at Port Authority Pier No. 2 in Brooklyn. Universal, the stevedore, unloaded the cargo. The coffee was stored on the pier. It was delivered to the various consignees' truckers over a six week period. Prior to delivery of ACLI's consignment to its trucker, each bag was weighed, as a result of which a total slackage of 61,886 lbs. in ACLI's portion of the shipment was discovered. In addition to the claim for slackage, there was also a claim for a shortage of sixty-eight bags in the consignment. None of the other consignees appears to have complained, although the same stevedore unloaded the entire cargo of the Maria U.
 
 II.
 
 8
 At trial, appellants Armadora and Uiterwyk relied chiefly on the following documentary evidence to establish that the coffee cargo was loaded aboard the Maria U in El Salvador in good order: twenty bills of lading for 54,560 bags of coffee consigned to ACLI; twenty corresponding receipts from the seller of the coffee; and the stowage plan of the Maria U. The district court concluded that the evidence as to how much coffee actually was loaded on the Maria U was conflicting and dismissed the action without reaching appellants' other claims.[2] A.C. & Leon Israel Coffee Co. v. S.S. Maria U, No. 78 Civ. 3974, slip op. at 6-9 & n.2 (S.D.N.Y. May 29, 1981).
 
 
 9
 Appellants now claim on appeal that the district court erred in construing the significance of the bills of lading. They assert that they introduced the bills of lading only to show that the ACLI consignment was loaded in good order, whereas the district court took the bills of lading to be an offer of proof as to the entire amount of coffee loaded on the Maria U.
 
 III.
 
 10
 Appellants rely principally upon Stein Hall & Co. v. S.S. Concordia Viking, 494 F.2d 287 (2 Cir. 1974). That case involved a consignment of gum arabic under four separate bills of lading. The shippers commenced a libel for shortages against the ship and the carrier. The carrier impleaded the stevedore as a co-defendant, settled with plaintiffs, and asked the court to allocate damages between the carrier and the stevedore. The carrier relied principally on documentary evidence to establish the loading of the cargo, including the bills of lading for the consignment, the vessel's manifest, and the mate's receipts. Id. at 290. The district court entered a judgment against the stevedore on the issue of liability. We affirmed.
 
 
 11
 In the instant case, the documentary evidence, unlike that in Stein Hall, we hold to have been insufficient. Here, the bills of lading were the most reliable evidence offered. True, the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1303(4) (1976), makes a bill of lading "prima facie evidence of the receipt by the carrier of the goods as therein described." See note 1, supra. COGSA, however, "makes no reference whatever to stevedores or agents." Robert C. Herd & Co. v. Krawhill Machinery Corp., 359 U.S. 297, 301, 79 S.Ct. 766, 769, 3 L.Ed.2d 820 (1959). It is the law of this Circuit that, in an action by a carrier against a stevedore, clean bills of lading, of themselves, are not prima facie evidence of receipt by the carrier of the goods enumerated in the bills of lading. Stein Hall, supra, 494 F.2d at 290-91.
 
 
 12
 Bills of lading, of course, do constitute some evidence that the cargo was loaded. In the instant case, however, the probative value of the bills of lading was undercut by appellants' failure clearly to establish their significance. Appellants did not make clear, or in any way indicate, when they introduced the bills of lading, that they were the bills of lading only for the ACLI consignment and not for the total cargo, as the district court was given to understand. Indeed, at page seven of their post-trial memorandum submitted to the district court, appellants claimed to have "introduced 18 clean on board bills of lading showing that 83,310 bags of coffee (the alleged total cargo) ... were loaded aboard the S.S. 'MARIA U' in San Salvador in June 1976." Appellants now complain that the district court erred in taking the bills of lading to be evidence of the total amount loaded, when this is precisely what appellants claimed them to be. The "confusion" on the part of the district judge of which appellants now complain on appeal most assuredly was of appellants' own making at the time of trial. We hold that appellants' failure clearly to establish the significance of the bills of lading renders them, of themselves, inadequate to make out a prima facie case.
 
 IV.
 
 13
 The remainder of the documentary proof, as the district court correctly held, added nothing of significance to appellants' case under the circumstances. The court concluded that the receipts for the coffee from the seller had virtually no value in establishing that the coffee actually was loaded on the vessel. Here again, appellants provided a totally inadequate foundation to establish the significance or probative value of these receipts. There was no testimony as to where the receipts were prepared or upon what they were based. Likewise, the stowage plan of the vessel was of little or no value in establishing appellants' prima facie case unless its significance was established; otherwise, as the district court concluded, the plan showed no more than the total amount of cargo expected to be loaded on the vessel.
 
 
 14
 In Stein Hall, supra, the carrier introduced, in addition to the bills of lading for the particular consignment, the mate's receipts and the manifest. There has been no explanation for appellants' failure to produce similar documentation here.[3] In a case such as this, where cargo was loaded in foreign ports, proof of such loading necessarily must be primarily documentary. Under such circumstances, it is especially important that there be established a clear foundation, including the particulars relied upon with respect to the probative value of the documentation, to enable the district court to make appropriate findings of fact which will provide the underpinning to support a reasoned conclusion. In the instant case, such a foundation not only was not established, but the court was affirmatively misled as to the nature of appellants' so-called offer of proof. Under the circumstances, we hold that appellants failed to establish a prima facie case.
 
 
 15
 Affirmed.
 
 
 
 *
 Hon. Thomas F. Murphy, Senior Judge, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The significance of the term "prima facie" throughout this opinion stems of course from the provision of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1303(4) (1976), which makes a bill of lading "prima facie evidence of the receipt by the carrier of the goods as therein described." See p. 87, infra
 
 
 [2]
 Among the claims which the district court found neither necessary nor appropriate to reach were whether the full amount of cargo was unloaded in New York and whether the stevedore was negligent. We agree, in view of the posture of the case as appears below in this opinion, that the district court was correct in not reaching these claims. And of course they are not before us on this appeal
 
 
 [3]
 The district court's opinion suggests that under the circumstances of the instant case appellants were required to produce evidence that the entire cargo was loaded in good order. This is not necessarily so. Stein Hall, supra. In that case, only the bills of lading for the consignment at issue were introduced. Some reliable documentation, however, such as the manifest, if properly introduced, might relate to the entire cargo. If such evidence were to establish that the entire cargo was loaded in good order, then a fortiori that would be probative of the fact that the particular consignment was loaded
 In the instant case, information from the manifest may have been adduced indirectly through a Universal receipt. A.C. & Leon Israel Coffee Co., supra, slip op. at 10 n.3. The district court, however, correctly discounted its importance, as "no witness testified about the precise information" in it. Id. Under such circumstances, it was impossible for the court to evaluate the significance or reliability of the receipt.