TAISHO MARINE & FIRE INSURANCE CO., LTD., Plaintiff-Appellant,

v.

The VESSEL "GLADIOLUS"; Gladiolus Shipping, Inc.; Sanko Steamship Co., Ltd.; Marine Terminals Corp.; Arkansas Best Freight, etc., Defendants-Appellees.

No. 84–5745.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1985.

Decided June 13, 1985.

Ronald D. Kent, Fisher, Porter & Kent, Long Beach, Cal., for plaintiff-appellant.

Christopher Ashworth, Garfield, Tepper & Ashworth, Los Angeles, Cal., for defendants-appellees.

Before BROWNING, KENNEDY and ALARCON, Circuit Judges.

KENNEDY, Circuit Judge:

Taisho Marine and Fire Insurance Co., Ltd. appeals from an order of summary judgment in favor of Arkansas Best Freight Systems, Inc. (ABF). Though we disagree with the district court's ruling on the statute of limitations issue, we agree with its ruling that timely notice was not given and therefore affirm dismissal of the action.

Taisho sued ABF for damage to a cargo of steel tubing. The cargo was carried by the vessel "Gladiolus" from Japan to Los Angeles under the terms and conditions of an ocean bill of lading issued by the ocean carrier, Sanko Steamship Co., Ltd. (Sanko). To complete its obligations under the bill of lading, Sanko hired stevedores to discharge the cargo of steel tubing from the vessel in Los Angeles. From Los Angeles, ABF, the inland trucking company hired by the consignee, Foster-Wheeler, transported the cargo by truck to Tulsa, Oklahoma.

The cargo arrived in Tulsa sometime between September 15, 1981 and September 21, 1981 in damaged condition. Foster-Wheeler orally notified ABF claims personnel of the damage, and, over the next few months, the parties continued to communicate both in writing and by telephone regarding the damage to the cargo.

Sanko's bill of lading contained a "Himalaya Clause," which extends the ocean carrier's defenses and liability limitations to certain third parties performing services on its behalf. The Clause provided in relevant part:

[A]ll servants, agents and independent contractors (including in particular, but not by way of limitation, any stevedores) used or employed by the Carrier for the purpose of or in connection with the per-

formance of any of the Carrier's obligations under this Bill of Lading, shall, in consideration of their agreeing to be so used or employed, have the benefit of all rights, defenses, exceptions from or limitations of liability and immunities of whatsoever nature referred to or incorporated herein applicable to the Carrier as to which the Carrier is entitled hereunder. . . .

All third parties covered by the Himalaya Clause may assert the one-year statute of limitation authorized by section 3(6) of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1303(6) (1982), and expressly incorporated into Sanko's bill of lading. A nine month claims period, which is authorized by the Carmack Act, 49 U.S.C. § 11707(e) (1982), was made applicable to the overland portion of the shipment by ABF's own bill of lading.

Having satisfied Foster-Wheeler's claim for damage, Taisho, the subrogated insurer, brought this action on June 3, 1983, naming Sanko, the Gladiolus and its owner, the stevedoring company, and ABF. The district court granted ABF's motion for summary judgment on the grounds, first, that ABF is a third party covered by the Himalaya Clause and therefore protected by the one-year period contained in Sanko's ocean bill of lading, and, second, that no timely written notice of the claim was given to ABF. The other defendants were also summarily dismissed from the case upon their own respective motions.

Taisho claims ABF is not protected by the one-year statute of limitation incorporated into Sanko's ocean bill of lading because ABF was neither in contractual privity with the ocean carrier nor rendering services in connection with the performance of any of the ocean carrier's obligations. We agree.

Himalaya Clauses should be strictly construed and limited to intended beneficiaries. *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 305, 79 S.Ct. 766, 771, 3 L.Ed.2d 820 (1959). The intent to extend COGSA benefits to third parties must be clearly expressed. *B.*

*Elliott (Canada) Ltd. v. John T. Clark & Son, Inc.*, 704 F.2d 1305, 1308 (4th Cir. 1983); *Certain Underwriters at Lloyds' v. Barber Blue Sea Line*, 675 F.2d 266, 269–70 (11th Cir.1982); *DeLaval Turbine, Inc. v. West India Industries, Inc.*, 502 F.2d 259, 264 (3d Cir.1974); *Cabot Corp. v. S.S. Mormacscan*, 441 F.2d 476, 478–79 (2d Cir.), *cert. denied*, 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96 (1971). When a party seeking protection under a Himalaya Clause is not specifically mentioned therein, the party should, at a minimum, be included in a well-defined class of readily identifiable persons to which COGSA benefits are extended under the terms of the clause. *Compare Barber Blue*, 675 F.2d at 269–70, *and Tessler Brothers (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 446–47 (9th Cir.1974), *with Cabot Corp. v. S.S. Mormacscan*, 441 F.2d at 478–79, *and Rupp v. International Terminal Operating Co.*, 479 F.2d 674, 677–78 (2d Cir.1973).

We have held that a bill of lading extending liability limitations to "independent contractors" includes stevedores among those protected, although the word "stevedores" is not specifically mentioned. We reasoned that the parties' use of the more inclusive term evidenced their intent to extend coverage to stevedores. *Tessler Brothers*, 494 F.2d at 446–47. *Accord Bernard Screen Printing Corp. v. Meyer Line*, 464 F.2d 934, 935 (2d Cir.1972) (per curiam), *cert. denied*, 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973).

█ Whether an entity is an intended beneficiary of a Himalaya Clause depends upon the contractual relation between the party seeking protection and the ocean carrier, as well as the nature of the services performed compared to the carrier's responsibilities under the carriage contract. In *Barber Blue*, 675 F.2d at 270, the Eleventh Circuit allowed a terminal operator to claim a COGSA liability limitation when the Himalaya Clause referred to "agents" and independent contractors. The terminal operator was engaged by the ocean carrier and was performing a duty within the scope of the ocean carriage contract when

the loss of goods occurred. *Cf. LaSalle Machine Tool, Inc. v. Maher Terminals, Inc.*, 611 F.2d 56, 59 (4th Cir.1979) (liability limitation covering the carrier's "agents … and independent contractors" does not include terminal operator who, although selected by the ocean carrier, was being paid by and performing services for the shipper). In *Toyomenka, Inc. v. S.S. Tosaharu Maru*, 523 F.2d 518 (2d Cir.1975), an independent contractor, engaged by the stevedore to guard certain cargo while it was in a pier shed awaiting delivery, was sued by the shipper for loss of cargo. The Himalaya Clause in the ocean carrier's bill of lading was identical to the one in issue: the clause extended COGSA liability limitations to "all servants, agents and independent contractors (including in particular, but not by way of limitation, any stevedores) used or employed by the Carrier for the purpose of or in connection with the performance of any of the Carrier's obligations under this Bill of Lading…." *Id.* at 521 n. 7. The Second Circuit determined that the liability limitation was inapplicable to the independent contractor, because the independent contractor had been employed by the stevedore rather than by the ocean carrier. *Id.* at 521–22. *Accord Tokio Marine and Fire Insurance Co. v. Nippon Yusen Kaisha Lines*, 466 F.Supp. 212, 213 (W.D.Wa.1979) (Himalaya Clause covering every "agent and sub-contractor" of the carrier only extends to parties in direct contractual relationship with the carrier).

█ Strictly construed, the Himalaya Clause in Sanko's bill of lading does not express a clear and unequivocal intent to extend COGSA's limitations of liability to inland truckers such as ABF. By its terms, the Clause applies only to agents and independent contractors "used or employed" by the ocean carrier. The undisputed facts show that ABF was hired by Foster-Wheeler, was performing a nonmaritime function after the carrier's obligations under its carriage contract had ended, and was rendering services under the terms and conditions of its own bill of lading. Under these circumstances, ABF

was an independent contractor of the consignee rather than an agent, servant, or independent contractor of the ocean carrier. The district court therefore erred in summarily dismissing the action on the ground that ABF was entitled to benefit from COGSA's one-year statute of limitations incorporated into Sanko's bill of lading.

However, the district court also granted summary judgment on the ground that Foster-Wheeler failed to provide ABF with a timely written notice of claim as required by the Uniform Bill of Lading. We affirm the district court on this ground. The issue involves no factual disputes and therefore is appropriate for summary adjudication. The undisputed facts show the following oral and written communications between the parties: (1) within days of delivery, Foster-Wheeler orally informed ABF claims personnel that Foster-Wheeler considered ABF to be a party responsible for the damage; (2) within one week of delivery, personnel from ABF and Foster-Wheeler held a meeting to discuss the damage; (3) Foster-Wheeler forwarded to ABF a report prepared by Foster-Wheeler's claims adjustment firm, identifying the shipment in question and the amount of damage; (4) ABF conducted an investigation of the occurrence; and (5) within nine months ABF sent a letter to Foster-Wheeler expressly denying liability on the claim. Taisho, Foster-Wheeler's insurer, took the position that any damage attributable to the inland carrier (ABF), rather than to the ocean carrier or stevedoring company, would not be covered by insurance. Accordingly, each meeting and communication between the parties, aside from the initial oral representation made within days of delivery, involved a joint undertaking to demonstrate to Taisho that ABF was not responsible for the damage.

■ A requirement in a bill of lading that claims for loss or damage be made in writing within a specified period of time after delivery of the property is intended to facilitate the carrier's investigation of the occurrence, to enable the carrier to protect

its interest. *Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196, 36 S.Ct. 541, 544, 60 L.Ed. 948 (1916); *Wisconsin Packing Co. v. Indiana Refrigerator Lines, Inc.*, 618 F.2d 441, 444 (7th Cir.) (en banc), *cert. denied*, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980). As a general rule, such written claims are liberally construed and the standard applied is one of substantial performance. The form of the written notice is less important than its adequacy in apprising the carrier of the basis for the claim and of the fact that reimbursement will be sought. *Wisconsin Packing*, 618 F.2d at 444, 446; *American Synthetic Rubber Corp. v. Louisville & Nashville R.R.*, 422 F.2d 462, 468 (6th Cir. 1970). Thus, the formal requirement that the written communication inform the carrier that it is being held responsible for the damage may be relaxed when the carrier is given written notice of the fact of damage, has conducted a full inquiry, and is aware, through other communications, that reimbursement will be sought. *Wisconsin Packing*, 618 F.2d at 447–48; *American Synthetic*, 422 F.2d at 468–69. *But see Atchison, Topeka & Santa Fe Ry. Co. v. Littleton Leasing & Investment Co.*, 582 F.2d 1237 (10th Cir.1978) (although written notice may be informal, verbal notice is insufficient).

■ In this case, ABF had actual knowledge of the damage to the tubing and conducted an investigation. Aside from Foster-Wheeler's initial assertion that "ABF was considered to be a responsible party," however, no communication put ABF on notice of Foster-Wheeler's intent to seek compensation from ABF. Foster-Wheeler made no further effort to make a formal claim. In fact, any intent to make a claim was negated by Foster-Wheeler's subsequent course of conduct. All of the writings, including the one prepared by the adjustment firm identifying the shipment and stating the amount of damages, were part of a joint effort to demonstrate to Taisho that ABF was not the cause of the damage. Since ABF investigated the damage under these circumstances, it was not

made aware of the necessity of conducting its investigation with the view of protecting its own interests. Accordingly, it was proper for the district court to grant summary judgment for ABF on the ground that Foster-Wheeler was not in substantial compliance with the requirement of a timely notice of claim.

The court extends its appreciation to both counsel in this case for the high professional quality of their briefs and their oral presentations.

AFFIRMED.