SILER, Circuit Judge,
dissenting:
I respectfully dissent from the majority decision. First; I disagree with the majority’s conclusion that ICC was acting as a principal, not as Kirby’s agent. As the majority states, ICC was a freight forwarder. Although a freight forwarder can be a principal, in this case it was acting as an agent for Kirby. The bill of lading between Kirby and ICC put Kirby on no *1312 tice that ICC would have to employ other entities to transport the freight. I do not see any significance in having two bills of lading rather than one, which, the majority concludes, is evidence that ICC was not Kirby’s agent. There is nothing in the record which indicated that Kirby expected ICC to ship the goods other than by contracting it with another carrier. When Kirby entered into a written contract with ICC to make ai-rangements for the transportation of the shipment, it declined the opportunity to obtain full liability coverage via its contract. Instead, COGSA through the Clause Paramount limited liability of the carrier.
As the majority states, Kirby was bound by the terms of the bill of lading between it and ICC. That included the Himalaya Clause. Thus, that would include a limitation of liability for Hamburg Sud. I also think that Norfolk Southern was a beneficiary of the Himalaya Clause in the Kirby/ICC bill of lading. Clearly, the bill does not include the name “Norfolk Southern,” nor does it say that it includes any inland carrier. Nevertheless, it includes “independent contractors.” When the bill of lading between Kirby and ICC was issued, Kirby knew that an inland carrier would have to be used, because of the destination being Huntsville, Alabama. It also knew that it had agreed to a limitation of liability for the carrier. As the majority states, Kirby and ICC could have used clearer language in the bill to include any inland carriers, but that does not mean that the failure to include them specifically precludes the application of a Himalaya Clause. See Certain Underwriters v. Barber Blue Sea Line, 675 F.2d 266, 270 (11th Cir.1982) (“The ‘clarity of language requirement,’ [as stated in Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 305, 79 S.Ct. 766, 771, 3 L.Ed.2d 820 (1959) ], does not mean, however, that COGSA benefits extend only to parties specifically enumerated in the bill of lading. It is sufficient that the terms express a clear intent to extend benefits to well-defined class of readily identifiable persons.”) I would follow the decision in Akiyama Corp. v. M.V. Hanjin Marseilles, 162 F.3d 571, 574 (9th Cir.1998), which focused upon “ the nature of the services performed compared to the carrier’s responsibility under the carriage contract.” I find no inconsistency in that decision with our decision in Certain Underwriters.
I also agree with the district court that Kirby was bound by the ICC/Hamburg Sud bill of lading, as it was a “through bill” which covered the entire transportation from Australia to Alabama. The ICC/Hamburg Sud bill of lading expressly included inland carriers. Therefore, the Himalaya Clause extended COGSA protection to Norfolk Southern. See Taisho Marine & Fire Ins. Co. v. Maersk Line, Inc., 796 F.Supp. 336, 339-40 (N.D.Ill.1992); Tokio Marine & Fire Ins. Co. v. Hyundai Merchant Marine Co., 717 F.Supp. 1307, 1309 (N.D.Ill.1989).
When Kirby initially engaged ICC, it accepted the risk and agreed to the limitation of liability on the part of ICC and all of its sub-contractors. Its insurer seeks a windfall by claiming no privity of contract. Kirby knew from the start that the ultimate destination would have to be through an inland carrier, so it should not be able to prevail on the technicality of its lack of privity of contract. Therefore, I would affirm the decision of the district court.