12-172-cv
Royal & Sun Alliance Insurance PLC v. IMSCO

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

––––––––––––

August Term, 2012

(Argued: December 19, 2012    Decided: January 7, 2013)

Docket No. 12-172-cv

––––––––––––

ROYAL & SUN ALLIANCE INSURANCE, PLC,

*Plaintiff-Appellee*,

— v. —

INTERNATIONAL MANAGEMENT SERVICES COMPANY, INC.,

*Defendant-Appellant*,

UPS SUPPLY CHAIN SOLUTIONS, INC.,
WORLDWIDE DEDICATED SERVICES, INC.,
TFE LOGISTICS GROUP, INC., FKA THE TFE GROUP, INC.,

*Defendants.*[*]

B e f o r e:

CALABRESI, LYNCH, and CHIN, *Circuit Judges*.

––––––––––––

[*] The Clerk of the Court is directed to amend the official caption in the case to conform to the caption listed above. TFE has withdrawn its appeal because the case against it was dismissed with prejudice by the district court below. TFE's appeal is therefore dismissed.

Appeal from a December 14, 2011, judgment of the United States District Court for the Southern District of New York (Marvin E. Aspen, *J.*, by designation) holding defendant liable to plaintiff in the amount of $500,000 plus interest. Defendant contends that it is entitled to the benefit of a contractual limitation on liability contained in a contract between its sub-bailor and a shipper. The district court correctly concluded that, under federal common law, limitations on liability do not extend to third parties in the absence of contractual intent that they do so. We further conclude that the same rule applies under the Carmack Amendment. Finally, we identify no error in the district court's finding on negligence.

AFFIRMED.

―――――――――

DAVID T. MALOOF (Thomas M. Eagan, *on the brief*), Maloof Browne & Eagan LLC, Rye, New York, *for plaintiff-appellee*.

BRUCE A. LINDSAY (Vincent M. DeOrchis, Montgomery, McCracken, Walker & Rhoads, LLP, *on the brief*), The Law Offices of Countryman & McDaniel, Los Angeles, California, *for defendant-appellant*.

―――――――――

PER CURIAM:

This case requires us to determine whether, under either the Carmack Amendment or the federal common law of bailment, a third-party contractor is entitled to receive the benefit of a liability limitation in a contract between a shipper and a carrier where the contract does not extend the limitation to third parties. Because we determine that – under either body of law – liability limitations extend to third-party contractors only if the contract clearly states that they do, and because we identify no error in the district court's finding on negligence, we affirm the judgment of the district court.

## BACKGROUND

The following facts are undisputed except where noted. On May 24, 2008, Ethicon, Inc., a pharmaceutical company, entered into a Logistics Services Agreement ("LSA") with defendant UPS Supply Chain Solutions, Inc. ("UPS") to provide transportation and distribution of various pharmaceutical products. The agreement specified that UPS's maximum liability to Ethicon would be $250,000 per shipment for "finished" goods and $100,000 for all other shipments. In a section titled "Third Party Carrier's Liability for Loss or Damage," the LSA stated that the liability of third-party carriers would "be governed by the applicable agreement with such carrier[s]."

UPS arranged for its wholly owned subsidiary, defendant Worldwide Dedicated Services, Inc. ("WDS"), to transport Ethicon's goods. While WDS provided the trucks, it had previously contracted with defendant-appellant International Management Services Company, Inc. ("IMSCO") to provide drivers for various deliveries. This agreement, the

3

Staffing Services Agreement ("SSA"), contained no limitation on liability for IMSCO. Furthermore, the SSA expressly provided that neither IMSCO nor its employees would be considered agents of WDS. The SSA also specified that IMSCO would obtain two million dollars in liability insurance per vehicle driven by an IMSCO employee and would indemnify WDS for any liability in excess of two million dollars.

On or about March 26, 2009, Ethicon sent a shipment of goods from its San Angelo, Texas facility to Tennessee pursuant to the LSA. UPS/WDS took possession of the shipment in Texas. The truck was driven by two IMSCO employees provided to WDS under the terms of the SSA. While the shipment was en route near Little Rock, Arkansas, the truck left the roadway, collided with a concrete barrier, and caught fire. The fire damaged several of the parcels in the truck, and the driver of the truck later died from injuries he sustained in the accident. The cause of the accident is disputed and was the primary issue of fact in the bench trial below.

After the accident, Ethicon filed a claim with its insurer, plaintiff-appellee Royal & Sun Alliance Insurance, PLC ("RSA"). RSA paid Ethicon $769,726.38 to cover losses related to the shipment. RSA, as Ethicon's subrogee, sought recovery from defendants UPS, WDS, IMSCO, and TFE Logistics Group, Inc. FKA The TFE Group, Inc. and ultimately filed suit in the United States District Court for the Southern District of New York on June 29, 2009.

RSA moved for partial summary judgment on three issues: first, whether UPS was liable to it for $250,000 under the LSA; second, whether WDS was not covered by the

4

LSA's liability limitation; and third, whether IMSCO and TFE were not covered by the limitation. The district court (Laura Taylor Swain, *Judge*) granted RSA's motion with respect to UPS and held UPS liable to RSA in the amount of $250,000. The district court denied RSA's motion with respect to WDS and held that WDS, as a wholly owned subsidiary of UPS, was covered by the liability limitation as it extended to "designated affiliates," of which WDS was explicitly one. Finally, the district court determined that IMSCO and TFE were not covered by the liability limitation, at least under the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 14706.

After the court's decision, RSA and IMSCO entered and filed a written stipulation. The parties stipulated that "the principal amount of plaintiff's damages is $750,000" and that "the total recoverable damages by RSA if liability is found is $500,000.00," because $250,000 had already been paid by UPS.[1]

IMSCO then moved to bifurcate the pending bench trial to address separately the question whether, under the federal common law of bailment, the LSA's limitation on liability extended to it, before proceeding to address the question of whether IMSCO's employee had negligently caused the accident. In deciding that motion, the district court (Marvin E. Aspen, *Judge*, by designation) was required to address the merits of the

---

[1] RSA argues that this stipulation waived IMSCO's right to argue that it is entitled to the benefit of the liability limitation. IMSCO argues that the stipulation was only as to the arithmetic question of damages, which would be calculated only if the liability limitation were found not to apply. Like the district court below, we need not reach this question because we dispose of the case on different grounds.

5

federal common law question; it determined that, like the Carmack Amendment, federal common law did not extend contractual liability limitations to third-party contractors absent evidence of contractual intent to so extend them.

After a bench trial on the remaining factual issues, the district court ruled in favor of RSA and ordered IMSCO to pay damages in the amount of $500,000 plus interest. In so doing, the district court relied on this court's burden-shifting framework for federal bailment cases. See Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 812 (2d Cir. 1971).

IMSCO now appeals and raises issues regarding the grant of RSA's motion for partial summary judgment, the denial of its motion to bifurcate the trial, and the district court's opinion following the bench trial.

## DISCUSSION

### I. Carmack Amendment

IMSCO challenges the district court's grant of partial summary judgment striking IMSCO's defense that it was covered by the LSA's liability limitation. Although IMSCO concedes that it is not a "motor carrier" under the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 14706, it argues that the Act extends a carrier's limitation on liability to its third-party sub-contractors.

The Carmack Amendment does not displace traditional contract principles except insofar as it specifically provides. In order for a contractual clause to extend a benefit to a third party, there must be evidence in the language of the contract of intent to do so. This

6

general principle applies to clauses that limit liability. See Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc., 612 F.3d 138, 142 (2d Cir. 2010) (describing how parties must use so-called "Himalaya clauses" to extend liability limitations to third parties that would otherwise not receive their protection).

The LSA contains no language extending the limitation of liability to third parties other than designated UPS affiliates (to whom the limitation expressly applies), of which IMSCO is not one. Rather, the LSA explicitly reserves that question for agreements between UPS and those third parties. Because the SSA is also silent on the question of whether IMSCO's liability is limited, there is no contractual intent among any of the parties to limit IMSCO's liability. We decline to hold that third parties to shipping contracts are automatic beneficiaries of limitations on liability that by their terms only apply to the parties to the contract. IMSCO's arguments under the Carmack Amendment are therefore unavailing.

## II. Federal Common Law of Bailment

### A. Limitations on Liability of Third-Party Sub-Bailees

IMSCO argues in the alternative that the federal common law of bailment extends the LSA's liability limitation to cover all sub-bailees. It argues that, because UPS/WDS was Ethicon's bailee, and Ethicon granted UPS/WDS the benefit of limited liability, federal common law extends that same limitation to any sub-bailee of UPS/WDS, of

7

which IMSCO was one.[2]  This argument fails for the same reasons that IMSCO's

Carmack Amendment argument does.

Under federal common law, the question whether a liability limitation extends to

third parties is "a simple question of contract interpretation."  Norfolk S. Ry. Co. v.

Kirby, 543 U.S. 14, 30 (2004); see also Robert C. Herd & Co. v. Krawill Mach. Corp.,

359 U.S. 297, 304-05 (1959); Toyomenka, Inc. v. S.S. Tosaharu Maru, 523 F.2d 518,

520-21 (2d Cir. 1975).  As noted above, the terms of the contracts in this case do not

extend the limitation on liability to cover sub-bailees.  Absent evidence that the parties

agreed to such a limitation, we decline to impose one.

### B.    Negligence

Finally, IMSCO argues that the district court erred by misapplying this Court's

precedent on the burden-shifting scheme applicable to negligence actions under the

federal common law of bailment.[3]  This Court has enunciated a two-part test for questions

of negligence by a bailee.  First, courts require the bailor to make a prima facie case of

negligence by showing that it delivered the shipment in good condition but did not

---

[2] We need not decide whether federal common law extends to non-carrier bailees of carriers otherwise governed by the Carmack Amendment.  The parties assume federal law applies, so we merely determine that the content of federal common law would not alter traditional contract principles if it were to apply.

[3] To the extent IMSCO asks this panel to overturn a prior decision of this court, we lack authority to do so.  See Adams v. Zarnel (In re Zarnel), 619 F.3d 156, 168 (2d Cir. 2010) ("This panel is bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." (internal quotation marks omitted)).

8

receive the goods back from the bailee. The burden of production then shifts to the bailee to show either that some cause other than its negligence caused the damage to the shipment or that it did in fact exercise the requisite level of care with respect to the shipment. See Leather's Best, 451 F.2d at 812.

In this case, the district court found after a bench trial that IMSCO had not adduced sufficient evidence to overcome the inference created by RSA's prima facie case. This is not the same as saying that IMSCO at any time bore the burden of proof. Indeed, the district court was careful to note that IMSCO had failed to overcome the inference in RSA's favor, not that IMSCO had failed to carry a burden it did not have. This type of determination is the sort reserved for triers of fact. See Commercial Molasses Corp. v. N.Y. Tank Barge Corp., 314 U.S. 104, 111 (1941) (holding that, if the bailee fails to defeat the inference, the trier of fact is entitled to rely on the presumption created by the prima facie case).

**CONCLUSION**

Under either the Carmack Amendment or the federal common law of bailment, limitations on liability apply to subcontractors only if there is evidence of contractual intent that they so extend. Because such intent was lacking in this case, IMSCO is not entitled to the benefit of the liability limitation in the LSA. Moreover, we find no error in the district court's finding of negligence on the part of IMSCO's employee. We therefore affirm the judgment of the district court.

9