**INTSEL CORPORATION, Plaintiff,**

v.

**M/V ANTONIA JOHNSON, her engines, etc.; Rederiaktiebolaget Nordstjernan; Johnson Line Stockholm; American President Lines, Ltd.; and Eagle Marine Services, Ltd., Defendants.**

**No. C81–986B.**

United States District Court,
W.D. Washington.

July 22, 1982.

Martin P. Detels, Jr. of Detels, Draper & Marinkovich, Seattle, Wash., for plaintiff.

Jeffrey R. Masi of Bogle & Gates, Seattle, Wash., for Nordstjernan & Johnson Line.

W. Craig Smith of Lane, Powell, Moss & Miller, Seattle, Wash., for American Pres. Lines & Eagle Marine Services, Ltd.

IN ADMIRALTY

ORDER DISMISSING PLAINTIFF'S CLAIMS AGAINST DEFENDANTS APL AND EMS

BEEKS, District Judge.

### THE FACTS

On October 20, 1979, at Le Havre, France, plaintiff's vendor and shipper delivered to defendants Rederiaktiebolaget Nordstjernan and Johnson Line, Stockholm ("Johnson") a cargo of thirteen skidded cases of aluminum sheets for shipment aboard defendant ANTONIA JOHNSON to Seattle, Washington. Johnson thereafter issued its negotiable Bills of Lading Numbers 3504 and 3505 pertaining to said shipment. On November 16, 1979, the ANTONIA JOHNSON arrived at Seattle and the cargo was discharged into the custody of defendant American President Lines, Ltd. ("APL") retained by Johnson to perform stevedoring services. In its complaint, plaintiff further asserts on information and belief that APL contracted with defendant Eagle Marine Services, Ltd. ("EMS") for the handling and storage of cargo and that EMS provided such services at times herein material. On April 9, 1981, upon plaintiff's request, Johnson's claims department extended the time for plaintiff to file the instant suit to August 15, 1981. The following day plaintiff sued defendants pursuant to the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1301–1315 (1976) ("COGSA"), seeking recovery of approximately forty-five thousand dollars for cargo damage.

Defendants APL and EMS move the court to dismiss plaintiff's claims against them because the complaint fails to state claims upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Because counsel have offered and the court has considered materials in addition to the pleadings in connection with this motion, the motion shall be treated as one for summary judgment and disposed of in accordance with Federal Rule of Civil Procedure 56. *See* Fed.R.Civ.P. 12(b). While both defendants seek summary dismissal, each does so on different grounds. APL seeks dismissal pursuant to the one year time-bar contained in the bills of lading and its contention that the time for suit had elapsed. EMS seeks dismissal because it had no role in the transaction which resulted in this action. For the reasons that follow, the motions of APL and EMS are granted.

### THE BILLS OF LADING

Bills of Lading Numbers 3504 and 3505 contain identical printed terms and conditions. The Clause Paramount in said bills, clause 5(A)(1), incorporates the terms of COGSA, including the provision which limits the time for suit to within one year of delivery of the cargo. *See* 46 U.S.C. § 1303(6) (1976). In addition, clause 5(C)(2)(b) expressly provides an identical limitation. *See Brown & Root, Inc. v. M/V PEISANDER,* 648 F.2d 415 (5th Cir.1981). Finally, clause four of the bills provides the carrier with authority to sub-contract any of its obligations and includes a "Himalaya clause" extending to specified agents or subcontractors the benefit of all provisions of said bills benefiting the carrier. *See Adler v. Dixon,* [1955] 1 Q.B. 158; W. Tetley, *Marine Cargo Claims* 373–76 (2d ed. 1978). Determination of whether the benefits of clauses limiting the liability of the carrier are available to stevedoring defendants requires an analysis of the pertinent contractual terminology and determining

whether the "intent to do so is clearly expressed." *Tessler Bros. (B.C.) Ltd. v. Italpacific Line,* 494 F.2d 438, 442 (9th Cir. 1974). Clause 4 of the bills at issue herein contains the following provision:

> ██t is agreed that the Carrier shall be entitled to subcontract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods .... [E]very such servant, agent of [sic] sub-contractor shall have the benefitting the Carrier .... The expression servant, agent or sub-contractor in this clause shall include direct and indirect servants, agents or sub-contractors or their respective servants or agents...

which evidences the parties' intent to extend the fullest protection to the agents and sub-contractors of the carrier. Without question, parties providing stevedoring services are intended beneficiaries of that protection. Hence, as an express third-party beneficiary of the protective clause appearing in the bill, APL is to be accorded the benefit of the one year time-bar.

### THE TIME EXTENSION

██ As noted above, more than sixteen months after discharge of the cargo and in response to plaintiff's request, Johnson extended the time for plaintiff to file suit to August 15, 1981. The effect of this extension was to preclude reliance by Johnson on the one year time-bar provided by COGSA and the bills. A similar extension was neither sought of nor granted by APL. The critical issue is whether the carrier's extension of time for suit beyond that appearing in the bill of lading operates, without consent of third-party beneficiaries, to extend the time for suit against said beneficiaries, thereby effecting an involuntary waiver of their vested right to the time-bar defense. It has been held that such an extension cannot adversely affect rights vested in the stevedoring agents, particularly the right to rely on an established limitation period for filing suit. *See Dorsid Trading Co. v. S/S FLETERO,* 342 F.Supp. 1 (S.D.Tex.1972). The court persuasively reasoned that

[t]he fact that the carrier ... has chosen to waive one of the benefits accruing under the bills of lading and COGSA should not mean that [the discharging stevedore] is concurrently stripped of that same benefit without any voice in the matter. Although the extension of "exemptions and immunities from and limitations of liability" to the stevedore is dependent upon the carrier's right to such benefits, the decision whether to exercise or to waive any specific benefit is not so dependent. Since the stevedore has been accorded the same exemptions as the carrier under the bill of lading by having been expressly made a third-party beneficiary, it has the right to waive or not waive any such benefit accruing to it thereby.

*Id.* at 9. Johnson's waiver of this defense has no effect, direct or otherwise, on APL's right to the benefit of the time-bar clauses appearing in the bill. This action was instituted approximately two years after the discharge of the cargo, at which time plaintiff's right to proceed against APL had lapsed. Accordingly, APL's motion to dismiss is granted.

### THE DEFENDANT WITHOUT A CAUSE

It appears that EMS is a Delaware corporation that did not commence doing business in Seattle until January of 1980; prior to that date the stevedoring operations were performed by the stevedoring department of APL. Plaintiff does not address or dispute this claim. It appears that plaintiff's allegation based on "information and belief" was erroneous. Hence, the motion of EMS to dismiss is likewise granted.