988 F.2d 327
 129 A.L.R.Fed. 673, 1993 A.M.C. 1661
 Motel MIKINBERG, Plaintiff-Appellant,
Vitaly Mikinberg, Mark Mikinberg, Plaintiffs,
v.
BALTIC STEAMSHIP CO., Rice Unruh, Reynolds Company,
Individually, and as agents for Baltic Steamship
Co., UTS, a division of Universal
Maritime Services, Defendants-Appellees.
 No. 343, Docket 92-7681.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 18, 1992.
Decided March 10, 1993.
 
 Motel Mikinberg, pro se.
 Joseph F. De May, Jr., New York City (R.R. Timothy Swiecicki, Cichanowicz, Callan & Keane, of counsel), for defendants-appellees Baltic S.S. Co., Rice Unruh, and Reynolds Co.
 Edward J. McCarren, New York City, for defendant-appellee Universal Maritime Services.
 Before: PRATT and ALTIMARI, Circuit Judges, and GERALD W. HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 ALTIMARI, Circuit Judge:
 Plaintiff-appellant Motel Mikinberg appeals pro se from a judgment of the United States District Court for the Eastern District of New York (Glasser, J.) granting summary judgment to defendants-appellees Baltic Steamship Company, Rice Unruh, and Reynolds Company (collectively "Baltic" or "the Baltic defendants") and defendant-appellee Universal Maritime Services ("Universal"). The district court dismissed Mikinberg's complaint based on its finding that Mikinberg failed to file a timely claim under the one-year statute of limitations of the Carriage of Goods by Sea Act ("COGSA") 46 U.S.C.App. § 1303(6) (1988). On appeal, Mikinberg contends that Baltic should be estopped from asserting the statute of limitations as a defense because he was misled into believing that the time limit would be extended while an investigation was being processed. We also consider whether COGSA's provisions apply to Universal as an agent of the carrier.
 For the reasons set forth below, the judgment of the district court is reversed and the case remanded.
 
 BACKGROUND
 
 1
 Motel Mikinberg and two of his relatives ("the Mikinbergs") arranged in late 1989 for Baltic to ship their personal effects from Russia to New York City. A bill of lading was issued on December 8, 1989, naming E. Gordover as the consignee. The bill of lading describes the shipment as two cases of "personal effects," and includes in Paragraph 18 an express provision that all defenses applicable to the carrier of the goods are applicable to agents of the carrier.
 
 
 2
 Baltic operated the M.V. Warnemunde, the vessel that transported the Mikinbergs' goods. The Warnemunde arrived in the United States on January 8, 1990 and left the United States the next day. The Mikinbergs' cargo was deposited at the Red Hook Terminal in Brooklyn, New York, and was available for delivery beginning on January 9, 1990.
 
 
 3
 The shipment was placed in the custody of defendant-appellee Universal Maritime Services ("Universal"), which performed stevedoring and terminal services. It is unclear from the record whether Universal performed these services pursuant to a contract with the Red Hook Terminal or with the Baltic defendants. At different points in its brief and in prior documents, Universal claims a contractual relationship with Baltic, but there is no evidence of such a contract in the record.
 
 
 4
 When the Mikinbergs and the consignee presented the bill of lading to Universal on May 10, 1990, they were directed to Baltic's offices. An agent for Baltic informed the Mikinbergs that Universal had released the baggage to someone using false documentation, and advised them to file a claim for any damages against Universal. Universal confirmed that it had released the Mikinbergs' belongings without verification of the forged papers presented to the terminal operator.
 
 
 5
 On or about January 28, 1991, Motel Mikinberg filed through counsel a summons and complaint on behalf of himself and his relatives against the Baltic defendants and Universal in New York state court. Mikinberg has stated that the suit was filed over a year after the delivery of the cargo because he was told to wait until Baltic and Universal had completed an investigation into the disappearance of the shipments. Baltic successfully removed the case to the United States District Court for the Eastern District (Glasser, J.) on March 7, 1991.
 
 
 6
 The Baltic defendants moved for summary judgment on November 29, 1991, asserting three bases for the motion: (1) that the action was time barred under COGSA, 46 U.S.C.App. § 1303(6), since it was brought more than one year after the delivery of the Mikinbergs' goods; (2) that the Mikinbergs lacked standing to sue, since they were not named on the bill of lading; and (3) that their carrier liability was limited under COGSA to $500.00 per package. Universal filed a motion for summary judgment asserting the same grounds, alleging that it was similarly protected by COGSA because the language of the bill of lading extended COGSA protections to it as an agent of Baltic.
 
 
 7
 On December 17, 1991, counsel for Mikinberg moved to be relieved, citing unfamiliarity with Russian and Yiddish. This motion was granted on December 31, 1991 and Mikinberg proceeded with the litigation pro se. According to the docket sheets, Mikinberg's counsel never filed a memorandum in opposition to the motions for summary judgment. Moreover, there is no indication that the Mikinbergs were present at the hearing on the motion.
 
 
 8
 On May 11, 1992, the district court granted the motion for summary judgment solely on the basis that Mikinberg had failed to file the claim within the one-year statute of limitations proscribed by COGSA, 46 U.S.C.App. § 1303(6), and incorporated into the bill of lading by the parties. The district court extended the protection of the bill of lading to Universal as an agent of Baltic.
 
 
 9
 Mikinberg now appeals pro se, arguing that the statute of limitations should have been extended for the period during which the defendants-appellees investigated the disappearance of the shipped packages. Alternatively, he argues that Baltic and Universal are estopped from asserting the statute of limitations defense because they misled Mikinberg into thinking that the statute would be extended.
 
 DISCUSSION
 
 10
 We review the district court's grant of summary judgment de novo. Trans-Orient Marine Corp. v. Star Trading and Marine, Inc., 925 F.2d 566, 572 (2d Cir.1991). We must "resolve all ambiguities and draw all reasonable inferences in favor" of the non-moving party, and require "the moving party to demonstrate the absence of any material factual issue genuinely in dispute." Heyman v. Commerce and Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975).
 
 I. COGSA's Statute of Limitations
 
 11
 The Carriage of Goods by Sea Act is applicable to all contracts for carriage of goods by sea or from ports of the United States in foreign trade. 46 U.S.C.App. § 1312 (1988). COGSA governs the responsibilities and liabilities of Baltic, the carrier in this case, since Baltic transported the Mikinbergs' shipment from a foreign port to a port of the United States. With regard to Baltic, COGSA provides for a one-year statute of limitations on all actions commenced under the statute:
 
 
 12
 [T]he carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered....
 
 
 13
 46 U.S.C.App. § 1303(6). Moreover, the bill of lading specifically preserves all COGSA defenses for the carrier.
 
 
 14
 There is no dispute that the Warnemunde discharged the Mikinbergs' cargo on either January 8, 1990 or January 9, 1990, or that the Mikinbergs received notice that the shipment had arrived. Baltic argues that under § 1303(6), the suit by the Mikinbergs filed on January 28, 1991 was clearly untimely, and that summary judgment was appropriate.
 
 
 15
 It is also undisputed that COGSA's statute of limitations applies in this case. However, there is a factual issue as to whether the Mikinbergs were misled into believing that the statute would be extended while the Baltic defendants and Universal conducted an investigation into the disappearance of their goods. Mikinberg contends that he was told that the statute of limitations would be extended while the investigation of the missing shipment was being processed by the defendants-appellees:
 
 
 16
 Lawyers and investigator (sic) were busy with this case for more than one year and were not in a hurry to bring this action to Court. I was told that the one year period of statute of limitations should be extended while the investigation is (sic) being processed.
 
 
 17
 Mindful of Mikinberg's difficulty with English and his status as a pro se litigant, we construe his arguments liberally. C.f., Dunlap-McCuller v. Riese Organization, 980 F.2d 153 (2d Cir.1992); Dell'Orfano v. Ramano, 962 F.2d 199, 203 (2d Cir.1992). In that light, Mikinberg argues that the defendants should not be allowed to assert the statute of limitations as a defense because Mikinberg awaited the results of the investigation to reveal who was at fault before filing suit.
 
 
 18
 We reject Mikinberg's argument that the statute of limitations under COGSA should be extended during such investigations. A statute of limitations lends certainty and finality to prospective litigation, see United States v. Kubrick, 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979), and if mere investigation by the defendant could toll the time for filing, this certainty and finality would be diminished.
 
 
 19
 Mikinberg's alternative argument, that Baltic is estopped from claiming a statute of limitations defense, is more persuasive. Cf. Glus v. Brooklyn Eastern Terminal, 359 U.S. 231, 234, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959) (applying estoppel to FELA statute of limitations). A defendant will be estopped from asserting the COGSA statute of limitations as a defense where a plaintiff can show that he was misled by the defendants into reasonably and justifiably believing that the statute of limitations would not be used as a defense or would be extended. See Linmark Indus., Inc. v. M/V "RUHR EXPRESS", 1990 WL 102234, at * 1 (S.D.N.Y. July 6, 1990)(denying summary judgment for carrier where there was evidence that plaintiff could have relied upon representations of carrier that settlement was imminent); Securitas Bremer Allgemeine Verischerungs-AS v. M/V "AURORA", 1990 WL 52096, at * 3 (S.D.N.Y. April 19, 1990)(granting summary judgment on limitations grounds for carrier, holding that shipper had no basis for assuming that carrier would waive statute of limitations); General Electric v. M/V Gediz, 720 F.Supp. 29, 30 (S.D.N.Y.1989) (granting summary judgment for carrier, holding that shipper failed to meet burden of showing facts demonstrating reliance on carrier's actions, where shipper could not reasonably rely on settlement negotiations that took place after limitations statute had expired); Austin, Nichols & Co. v. Cunard S.S. Ltd., 367 F.Supp. 947, 949 (S.D.N.Y.1973) (denying summary judgment for carrier, finding that allegations in affidavits that shipper relied on assurances from defendants' agents that claims would be paid and that suit was unnecessary were sufficient to present a genuine issue of material fact); Monarch Indus. Corp. v. American Motorists Ins. Co., 276 F.Supp. 972, 979 (S.D.N.Y.1967) (finding no estoppel where defendant had agreed to waive statute of limitations for only definite period, not indefinitely). The estoppel doctrine has also been widely applied in other courts. See United Fruit Co. v. J.A. Folger & Co., 270 F.2d 666, 669 (5th Cir.1959), cert. denied, 362 U.S. 911, 80 S.Ct. 682, 4 L.Ed.2d 619 (1960); Modern Office System v. Aim Caribbean Express, Inc., 802 F.Supp. 617, 623 (D.P.R.1992); Puerto Rico Marine Mgmt., Inc. v. Ken Penn Amusement, Inc., 574 F.Supp. 563, 566 (W.D.Pa.1983); Birdsall, Inc. v. Tramore Trading Co., Inc., 771 F.Supp. 1193, 1197 (S.D.Fla.1991); Hemis Trading Corp. v. Navieras de Puerto Rico, 705 F.Supp. 72, 74 (D.P.R.1989); Michelena & Co. v. American Export and Isbrandten Lines, Inc., 258 F.Supp. 479, 480 (D.P.R.1966).
 
 
 20
 The question is not whether the statute was tolled while the investigation was being processed, nor whether it was tolled because of Baltic's actions. Rather, we examine whether as a matter of equity Baltic is estopped from asserting the time bar as a defense. See Austin, 367 F.Supp. at 948. This is an issue of fact, and one that need not be proved by documentation if credible testimony is given about misrepresentations by the defendants.
 
 
 21
 In this case, Mikinberg would have to show that Baltic falsely represented to him that the statute would be extended during the investigation into the stolen cargo, or that Baltic would not assert the statute as a defense. Mikinberg would also have to show that he relied on this representation in failing to file suit within one year from delivery. An oral representation would suffice. See Gourmand, Inc. v. M/V Nedlloyd Inc., 1989 WL 54155, at * 1 (S.D.N.Y. May 18, 1989).
 
 
 22
 Unfortunately, the district court did not discuss the estoppel issue, and Baltic did not brief the issue. There is a possibility that the estoppel issue was not specifically presented to the district court. It is well settled that we will generally not consider claims that the parties failed to present before the district court. Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 527 (2d Cir.), cert. denied, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990). However, the lack of documentation on this issue more appropriately warrants a remand for factual determinations by the district court. The record on appeal does not include a memorandum in opposition to the motions for summary judgment, and the docket sheet does not indicate that one was filed. We are aware that the Mikinbergs' attorney was allowed by the district court to withdraw after the motions for summary judgment had been filed but before the motion had been argued. Presumably, this meant that the attorney did not file a memorandum in opposition, and that Mikinbergs were without counsel to oppose the motion. Moreover, it is possible that the Mikinbergs were not even present at the hearing on the motion, or that if they were present they were unable to adequately present their case because of the language barrier. Given these facts, we cannot find that the estoppel argument has been waived.
 
 
 23
 We therefore remand to the district court for consideration of the question of estoppel.
 
 II. Universal's Status as Baltic's Agent
 
 24
 There is also an issue of fact over whether the bill of lading extends COGSA's protections to Universal. Since Universal is not a carrier, it is not automatically covered by COGSA.
 
 
 25
 The immunities and limitations of COGSA extend only to the carriers of goods by sea, not to their agents or employees. See Robert C. Herd & Co. v. Krawill Mach. Corp., 359 U.S. 297, 301-03, 79 S.Ct. 766, 769-70, 3 L.Ed.2d 820 (1959) (holding that COGSA protections do not limit the liability of negligent acts of carrier agents); Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S, 943 F.2d 220, 222 (2d Cir.1991). However, the provisions of the bill of lading may contractually extend the defenses and limitations of liability provided to a carrier under COGSA to an agent of the carrier through what is known as a "Himalaya Clause." Colgate Palmolive Co. v. S/S Dart Canada, 724 F.2d 313, 315 (2d Cir.1983), cert. denied, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); Citrus Mktg., 943 F.2d at 222. Use of a "Himalaya Clause," however, means that COGSA only applies as a contractual term, not of its own force. Id. at 223. Moreover, such contractual "limitations are to be strictly construed against the party whom they are claimed to benefit." Scheiss-Froriep Corp. v. S.S. Finnsailor, 574 F.2d 123, 127 (2d Cir.1978).
 
 
 26
 The bill of lading does provide a "Himalaya Clause" in Paragraph 18:
 
 
 27
 every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect ... [every] servant or agent of the Carrier (including every independent contractor) ... employed by the Carrier.
 
 
 28
 That is, Paragraph 18 extends to the agents of Baltic every right and protection enjoyed by the carrier itself. Since Baltic enjoys the protection of COGSA's statute of limitations, Universal argues that the same protection extends to it. The bill does not need to expressly specify stevedores in order to cover them, so long as it clearly expresses the intent to extend COGSA benefits to third parties. See, e.g., Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc., 896 F.2d 656, 660 (1st Cir.1990); Certain Underwriters at Lloyds' v. Barber Blue Sea Line, 675 F.2d 266, 270 (11th Cir.1982).
 
 
 29
 Stevedores have often been held to be agents of the carrier and protected by COGSA limitations on liability. See Seguros "Illimani" S.A. v. M/V Popi P, 929 F.2d 89, 93 (2d Cir.1991) (holding that bill of lading extended COGSA protections to stevedore); Bernard Screen Printing Corp. v. Meyer Line, 464 F.2d 934, 935-36 (2d Cir.1972) (holding that contractual provisions in a bill of lading extending liability limitations of COGSA to stevedores were valid), cert. denied, 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973); see also Barretto, 896 F.2d at 660; Institute of London Underwriters v. Sea-Land Service, Inc., 881 F.2d 761, 766-67 (9th Cir.1989); Certain Underwriters at Lloyds', 675 F.2d at 270; Styling Plastics Co. v. Neptune Orient Lines, Ltd., 666 F.Supp. 1406, 1410 (N.D.Cal.1987); Timco Eng'g, Inc. v. Rex & Co., Inc., 603 F.Supp. 925, 928 (E.D.Pa.1985); Instel Corp. v. M/V Antonia Johnson, 549 F.Supp. 526, 528 (W.D.Wa.1982); B. Elliott (Canada) Ltd. v. John T. Clark & Son of Maryland, Inc., 542 F.Supp. 1367, 1370 (W.D.Ma.1982), aff'd, 704 F.2d 1305 (4th Cir.1983).
 
 
 30
 However, in this case the agency relationship between Universal and Baltic was assumed by the district court without a specific finding. In fact, there is some doubt that Universal was an agent of Baltic, since Universal seems to indicate that it was an agent of Red Hook Terminal. If this is so, then Universal cannot claim the benefits of the bill of lading.
 
 
 31
 Not every entity that handles a package in the flow of transport that also includes the carrier is an agent of the carrier. In Toyomenka, Inc. v. S.S. Tosaharu Maru, 523 F.2d 518, 521 (2d Cir.1975), we considered a bill of lading including a "Himalaya Clause" extending COGSA limitations to "all servants, agents and independent contractors ... [u]sed or employed by the Carrier." Id. We held that the clause did not extend those limitations to the independent contractor of one of the stevedores. Id. at 521-22. The contractor had been hired to guard the shipments stored by the stevedore. In holding that the "Himalaya Clause" did not cover the independent contractor, we stated:
 
 
 32
 McRoberts [the contractor] was not employed by the carrier in the usual sense of that term.... We are not persuaded by the argument that the term "employed" should be given a broad construction and, along with the word "used", that it should be construed to mean "made use of" in furtherance of the duties of the carrier.... [T]hose who are to be accorded limitation of liability as third party beneficiaries under [the "Himalaya Clause"] must be parties to the contract or must be deemed to be such.
 
 
 33
 Id. at 521-522; see also Schiess-Froriep Corp., 574 F.2d at 127 (reversing summary judgment for stevedore, holding that a "Himalaya Clause" that does not specify whose agents and independent contractors are covered does not extend protection to a stevedore who was acting on behalf of the consignee, not the carrier). Other courts have also recognized the primary importance of a contractual relationship between the carrier and the purported agent. See, e.g., Koppers Co. v. S/S Defiance, 704 F.2d 1309, 1311 (4th Cir.1983) (allowing stevedore to claim status of agent because stevedore rendered services pursuant to a contract with the carrier); Mori Seiki USA, Inc. v. M.V. ALLIGATOR TRIUMPH, 1991 WL 432054, at * 6 (C.D.Cal. October 16, 1991)(same); Tokio Marine and Fire Insurance Co. v. Nippon Yusen Kaisha Lines, 466 F.Supp. 212, 213 (W.D.Wa.1979) ("[T]he rule in this circuit, as elsewhere, is that only those parties in a direct contractual relationship with the carrier may take advantage of bill of lading provisions and then only if the intent to extend them to those parties is clearly expressed.").
 
 
 34
 There must be a contractual relationship between Universal and Baltic in order for the provisions in the "Himalaya Clause" to apply. It is not enough that Universal merely handled the cargo shipped by Baltic. Otherwise, any transporter in the flow of commerce would be automatically protected by a single bill of lading regardless of its contractual privity with the shipper or carrier. We decline to extend COGSA protections through the "Himalaya Clause" to indefinite and unforeseeable defendants who may have only an attenuated connection to the "carriage of goods by sea."
 
 
 35
 Unless Universal can establish its contractual relationship with Baltic, it cannot assert the statute of limitations as a defense under COGSA. We remand to the district court for consideration of this question.
 
 CONCLUSION
 
 36
 For the above reasons, we reverse and remand to the district court for further proceedings consistent with this opinion.