The NIPPON FIRE & MARINE
INSURANCE COMPANY,
Plaintiff,

v.

M.V. TOURCOING, Wilhelmsen Lines
A.S. and Maher Terminals, Inc.,
Defendants.

No. 96 Civ. 0719(MGC).

United States District Court,
S.D. New York.

Sept. 17, 1997.

**208**

Maloof & Browne, LLP, New York City by David T. Maloof, Lawrence Browne, for Plaintiff.

Kenny & Stearns, New York City by William J. Manning, Jr., James M. Kenny, for defendants.

## OPINION

CEDARBAUM, District Judge.

In this action, Nippon Fire & Marine Insurance Company seeks recovery of $1,186,-467.87 that it paid to Komori America Corporation pursuant to a marine cargo insurance policy. The money was paid for damage to an offset printing press after the press had been shipped from Japan to the United States and while it was being unloaded from the vessel M.V. Tourcoing. Nippon sues Wilhelmsen Lines A.S., the owner and operator of M.V. Tourcoing, and Maher Terminals, Inc., which acted as stevedore for Wilhelmsen at the port of discharge.[1] The only issue now before the court is whether the $500 limitation of liability that is included in the bill of lading limits the liability of either Wilhelmsen or Maher or both. For the reasons that follow, Wilhelmsen's motion for partial summary judgment limiting its liability to $500 per package is granted but Maher's motion for partial summary judgment similarly limiting its liability is denied. Nip-

pon's motion for summary judgment or, in the alternative, for partial summary judgment dismissing any limitation-of-liability defense, is denied. Nippon's motion pursuant to Fed.R.Civ.P. 37 to designate certain facts as true, to preclude defendants from introducing evidence on certain issues and to require defendants to pay Nippon's expenses is also denied.

### Undisputed Facts

In December 1992, Komori entered into a contract with Wilhelmsen to ship an offset printing press from Japan to the United States. (Pl.'s 3(g) ¶ 5; Defs.' counter–3(g) ¶ 5.) The press was to be shipped disassembled in thirteen separate cases. (Defs.' 3(g) ¶¶ 7, 8; Pl.'s Resp. to Defs.' 3(g) ¶¶ 7, 8.) It is undisputed that each case constitutes a "package" within the meaning of the Carriage of Goods by Sea Act ("COGSA"). A bill of lading covering the thirteen cases was issued by Wilhelmsen on December 28, 1992. (Defs.' 3(g) ¶ 6; Pl.'s Resp. to Defs.' 3(g) ¶ 6.) Clause 11 of that bill of lading, entitled "Package Limitation," expressly limits the liability of Wilhelmsen, its servants and its subcontractors to $500 per package, unless the shipper declares the nature and value of the cargo and pays an additional charge. Although there is a box on the front of the bill of lading in which the shipper could have declared an excess value, it is undisputed that no value was declared. (Defs.' 3(g) ¶ 17; Pl.'s Resp. to Defs.' 3(g) ¶ 17.)

On February 1, 1993, the Tourcoing, carrying the printing press, arrived at the port of discharge in New Jersey. (Defs.' 3(g) ¶ 9; Pl.'s Resp. to Defs.' 3(g) ¶ 9.) Maher, which was acting as stevedore, unloaded the press from the vessel. During the course of discharge but while the press was still on board the vessel, two of the cases were damaged.[2] (Defs.' 3(g) ¶ 11; Pl.'s Resp. to Defs.' 3(g) ¶ 11; Defs.' Br. at 3 n. 2.) Nippon, as Komori's insurer, paid Komori ¥ 123,582,641 for the damage. (Pl.'s 3(g) ¶ 14; Defs.' counter–3(g) ¶ 14.) In this action, Nippon seeks to

---

**1.** The vessel M.V. Tourcoing is also named as a defendant in this suit, but it has not been arrested.

**2.** Plaintiff argues that all 13 cases, even those ultimately found to be undamaged, were re-

turned to Japan for inspection and "realignment" and that it should therefore be able to recover expenses associated with all 13 cases. (Defs.' Br. at 3 n. 2; Pl.'s Br. at 2 n. 2.)

recover $1,186,467.87 from defendants. (Pl.'s 3(g) ¶ 12; Defs.' counter–3(g) ¶ 12.)

Defendants admit that, subject to any package limitation or other defense, they are liable for the damage to the offset printing press. (Pl.'s 3(g) ¶ 15; Defs.' counter–3(g) ¶ 15.) Accordingly, the only issue is whether Wilhelmsen and/or Maher is entitled to the benefit of the $500 package limitation in the bill of lading.

*Discussion*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat a motion for summary judgment brought by the party that does not bear the burden of proof, the party with the burden of proof must make a showing sufficient to establish the existence of every element essential to that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding whether a genuine issue of material fact exists, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir.1993) (citation omitted).

### 1. *The Fair Opportunity Doctrine*

■ Plaintiff argues that the bill of lading in this case does not give clear and unambiguous notice to the shipper of a limitation of liability. Accordingly, plaintiff argues, no limitation of liability is available. This argument is based on the judicially-created "fair opportunity doctrine." The doctrine, as enunciated by the Supreme Court in *New York, New Haven & Hartford Railroad Co. v. Nothnagle*, 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953), provides that "only by granting its customers a fair opportunity to choose between higher and lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained." If the carrier does not provide such a fair opportunity, it is not entitled to the benefit of any limitation of liability that might otherwise apply. *General Electric Co. v. MV Nedlloyd*, 817 F.2d 1022, 1028 (2d Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 661 (1988).

■ A carrier seeking to enforce a package limitation must first make a prima facie showing that notice of the limitation was given to the shipper, and that thus the shipper was given an opportunity to opt out of the limitation by declaring a higher value. *See General Electric*, 817 F.2d at 1029; *Couthino, Caro and Co., Inc. v. M/V Sava*, 849 F.2d 166, 171 (5th Cir.1988). This prima facie showing can be made by pointing to the language contained in the bill of lading. *General Electric*, 817 F.2d at 1029. If the carrier succeeds in establishing its prima facie case, the burden shifts to the shipper to demonstrate that a fair opportunity did not exist. *Id.*

The language of the bill of lading at issue in this case expressly provides that liability is limited to $500 per package. Clause 11 of the bill of lading, entitled "Package Limitation," states:

> Neither the Carrier, its servants or subcontractors nor the vessel shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding U.S. $500 per package, ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in this bill of lading (Box·16) AND the shipper has paid the additional charges on such declared value.

Box 16, on the front of the bill of lading, is labeled "DECLARED VALUE (SEE CLAUSE 11 RE: $500 LIMIT)" and provides a space for the shipper to declare an excess value. It is undisputed that in this case, no excess value was declared.

Plaintiff argues, however, that Clause 7 of the bill of lading, the "clause paramount," is ambiguous and that therefore it is not clear that the $500 limitation of Clause 11 applies. According to plaintiff, the ambiguity of Clause 7 stems from the fact that it provides

for alternative limitations of liability depending on the country in which suit is brought. Clause 7 provides: "[T]his Bill of Lading shall be subject to the provisions of COGSA, ..., which Act is incorporated herein, or to any law similar to the 1924 Hague Rules or Hague–Visby Rules if such Law is compulsorily applicable to this Bill of Lading in the country where suit is brought." COGSA is the Carriage of Goods by Sea Act, which was approved on April 16, 1936 and is based on the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, known as the "Hague Rules." COGSA applies *ex proprio vigore* to all shipments to or from United States ports. 46 U.S.C.App. §§ 1300, 1312. A number of countries, including Japan, have adopted both the Hague Rules and certain amendments to the Hague Rules known as the Visby Amendments, which together are known as the "Hague–Visby Rules." Thus, Clause 7 of the bill of lading provides that COGSA applies if suit is brought in the United States, and the Hague–Visby Rules apply if suit is brought in a country that has made those Rules compulsorily applicable.

The only difference between COGSA and the Hague–Visby Rules that is relevant to this case is the amount of the limitation of liability. COGSA limits the carrier's liability to $500 per package, but permits shippers and carriers to agree to raise that limit by contract. The Hague–Visby Rules generally provide for a higher limitation of liability than does COGSA, but the exact limitation varies among countries. According to plaintiff, the fact that the applicable limitation of liability depends on the country in which suit is brought renders Clause 7 ambiguous and means that the shipper was not given clear notice of the limitation of liability. This is particularly true, according to plaintiff, because the limitation varies greatly among countries. Thus, plaintiff contends, it was impossible for either party to determine, at the time the bill of lading was issued, which of over 100 different limitations would apply.[3] (Pl.'s Br. at 5; *see* William Tetley, *Package &*

*Kilo Limitations and The Hague, Hague/Visby and Hamburg Rules & Gold,* J.Mar.L. & Com., Jan. 1995 at 133, App. A, attached as Ex. A to Pl.'s Br.)

However, plaintiff provides no authority to support its position that the existence of alternative liability limits renders a clause paramount ambiguous or deprives a shipper of fair notice. Plaintiff argues, citing *Francosteel Corp. v. M.V. Pal Marinos,* 885 F.Supp. 86, 88 (S.D.N.Y.1995) (quoting *Francosteel Corp. v. M/V Deppe Europe,* 1990 WL 121683 at *3, 1990 A.M.C. 2962 (S.D.N.Y. 1990)), that "parties to a contract should have the assurance of their potential liabilities at the time of contract, *i.e.,* at the time and place of issuance of the bill of lading." But the court in *Pal Marinos* made that statement to explain its refusal to interpret an ambiguous clause paramount in the shipper's favor. The shipper had asked the court to hold that the choice of applicable law depended on the country in which suit was brought. But the clause paramount in that case stated only that the bill of lading "shall have effect subject to the Hague Rules or Hague–Visby Rules as the case may be," without providing any criteria for determining which of those rules should apply. *Id.* at 87–88. The court refused to read "as the case may be" to mean "depending on the country where suit is brought," reasoning that "[i]n the absence of a clear intention to include such uncertainty in a contract, the court is reluctant to read the existence of such an intention into a contract." *Id.* at 88; *see also Francosteel Corp. v. M/V Deppe Europe,* 1990 WL 121683 at *3, 1990 A.M.C. 2962 (S.D.N.Y.1990) (refusing to interpret ambiguous clause paramount to make choice of COGSA or Hague–Visby Rules depend on country in which suit is brought).

In this case, unlike in *Pal Marinos,* the bill of lading clearly provides that the law that will apply in any future suit is the law compulsorily applicable in the country in which suit is brought. A bill of lading is a contract for the carriage of goods. If the

---

**3.** Although plaintiff's contention is accepted for the purpose of this opinion, plaintiff has never explained why on a shipment from Japan to the United States, it was not foreseeable that the United States was the most likely venue and that there was a high probability that COGSA would apply.

parties to a contract express a clear intention to introduce uncertainty in the form of alternative limitations of liability into the contract, they are entitled to have that intention enforced.

Moreover, the clause paramount must be read in the context of the bill of lading as a whole, including the express $500 limitation set forth in Clause 11. In light of that clause, plaintiff's argument that the shipper could reasonably have assumed that the higher Hague–Visby limits would apply is unpersuasive. It is true, as plaintiff notes, that Clause 11 might be read to conflict with Clause 7, since Clause 11 sets a $500 limit while Clause 7 contemplates the higher Hague–Visby limit in certain circumstances. But at least two judges in this district have held that the inclusion of both clauses in a bill of lading does not create a conflict because the limitation-of-liability clause is simply a reference to the $500 COGSA limitation, which applies when COGSA applies and not when COGSA does not apply. *See, e.g., Pal Marinos,* 885 F.Supp. at 88–89; *Daval Steel Products v. M/V Acadia Forest,* 683 F.Supp. 444 (S.D.N.Y.1988). Those cases held that any other reading of the limitation-of-liability clause would render the invocation of the Hague–Visby Rules meaningless. Therefore, in circumstances in which the Hague–Visby Rules applied pursuant to the clause paramount, those courts held that the limitation-of-liability clause did not negate the applicability of the higher Hague–Visby limit. I find the reasoning of those cases persuasive. But in any event, the conflict in those cases arose only because the Hague–Visby Rules applied pursuant to the clause paramount. In this case, in contrast, the $500 limitation applies both pursuant to COGSA and pursuant to the specific limitation-of-liability clause.

In view of the fact that: (1) the clause paramount unambiguously provides for alternative limitations of liability depending on the country in which suit is brought; (2) a separate limitation-of-liability clause specifically limits liability to $500; and (3) the front of the bill of lading includes a space in which to declare excess value and refers to the express $500 limitation of liability, the shipper had adequate notice and a fair opportunity to opt out of the limitation-of-liability scheme set forth in the bill of lading. Accordingly, Wilhelmsen's liability in this case is limited to $500 per package.

### 2. *The Himalaya Clause*

 Plaintiff argues that even if Wilhelmsen is entitled to a $500 package limitation, Maher is not so entitled. COGSA applies only to carriers, not to stevedores or agents. *See Robert C. Herd & Co. v. Krawill Machinery Corp.,* 359 U.S. 297, 301–03, 79 S.Ct. 766, 769–70, 3 L.Ed.2d 820 (1959). The bill of lading may, however, contractually extend the limitation of liability provided for in COGSA to a stevedore through a "Himalaya Clause." In order for such a clause to be effective, the language must clearly demonstrate the parties' intention to extend the limitation. *Id.* at 305, 79 S.Ct. at 771. Such clauses are strictly construed against the party claiming the benefit of the clause. *Mikinberg v. Baltic Steamship Co.,* 988 F.2d 327, 332 (2d Cir.1993). However, a Himalaya clause need not expressly refer to stevedores in order to extend the COGSA limitation of liability to cover them. *Id.* Stevedores may be "agents" or "independent contractors" of the carrier and therefore protected by a Himalaya clause that refers to "agents" or "independent contractors." *Id.* In order for a stevedore to be protected as an agent or contractor, there must be a contractual relationship between the stevedore and the carrier. *Id.* at 333.

 The Himalaya clause in this case provides, in pertinent part: [4]

6. Defenses of Contract—Subcontractors and Other Servants (See Clause 11)

---

**4.** Nippon contends that the first half of the clause, which purports to eliminate liability for the negligence of certain parties, is void under COGSA. *See* 46 U.S.C.App. § 1303(8); *United States Fire Insurance Co. v. S.S. MEE MAY,* 1990 WL 154696 at *4 n. 4, 1990 A.M.C. 1632

(S.D.N.Y.1990). In any event, the bill of lading contains a separability clause that provides that the fact that one clause or part of a clause is held to be invalid or unenforceable does not render the remaining provisions invalid.

(a) The Carrier shall be entitled to subcontract on any terms the whole or any part of this Carriage.

(b) The Merchant undertakes that no claim or allegation shall be made against any person whomsoever by whom the Carriage or any part of the Carriage performed or undertaken (other than the Carrier) which imposes or attempts to impose upon any such person, or any vessel owned by any such person, any liability whatsoever in connection with the Goods or the Carriage of Goods, whether or not arising out of negligence on the part of such person and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such person shall have the benefit of every exemption, limitation, condition and liberty herein contained and have every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Carrier as if such provisions were expressly for his benefit, and in entering into this contract, the Carrier, to the extent of these provisions, does so not only on his own behalf, but also as an agent and trustee for such persons.

Plaintiff argues that this language is insufficiently clear to extend the $500 package limitation to a stevedore. It is true that the Himalaya Clause does not specifically mention stevedores. Instead, it first authorizes Wilhelmsen to "subcontract ... the whole or any part of this Carriage" and then extends liability to "any person whomsoever by whom the Carriage or any part of the Carriage performed or undertaken." A bill of lading is a contract for the carriage of goods. Clause 6(a) permits Wilhelmsen to subcontract all or part of the carriage, that is, all or part of its duties under the bill of lading. Clause 6(b) then extends the limitation of liability to any entity that performs any of Wilhelmsen's duties under the contract. Although Clause 6(b) does not specifically use the term "subcontractor," Clause 6(b) should be read in conjunction with Clause 6(a), which permits Wilhelmsen to subcontract any part of the carriage. Moreover, Clause 11 expressly extends the $500 limitation of liability to Wilhelmsen's "servants and subcontractors." Therefore, the bill of lading clearly extends the $500 package limitation to any subcontractor that performs tasks that Wilhelmsen is obliged to perform under the contract of carriage.

█ Nippon does not argue that the tasks performed by Maher were not Wilhelmsen's obligation under the bill of lading. Nor could it so argue, since Wilhelmsen's duties as carrier continued until "proper delivery" of the cargo had been made. That is, Wilhelmsen continued to be obligated under the bill of lading until "the goods [were] discharged from the ship upon a fit wharf and the consignee receive[d] due and reasonable notice that the goods [had] been discharged and [had] a reasonable opportunity to remove the goods or put them under proper care or custody." *Wemhoener Pressen v. Ceres Marine Terminals, Inc.*, 5 F.3d 734, 742 (4th Cir.1993) (quoting *B. Elliott (Canada) Ltd. v. John T. Clark & Son*, 704 F.2d 1305 (4th Cir.1983)); *see* 46 U.S.C.App. §§ 190 *et seq.* (Harter Act); *see also Farrell Lines Inc. v. Highlands Insurance Co.*, 696 F.2d 28 (2d Cir.1982). Because Maher's unloading of the press from the vessel constituted the performance of one of Wilhelmsen's duties under the bill of lading, Maher performed "part of [the] Carriage."

█ Plaintiff argues, however, that the Himalaya Clause is ambiguous because the term "Carriage" is capitalized but is not defined in the bill of lading. Plaintiff contends that the proper way to interpret the term "Carriage" is to refer to the term "Carrier," defined in the bill of lading as "Wilhelmsen Lines AS; the shipowner and the vessel." Therefore, according to plaintiff, the term "Carriage" includes only activities performed by Wilhelmsen and the vessel, not activities performed by Maher. But plaintiff's interpretation is in direct conflict with the clause's express purpose to extend the limitation of liability to "person[s] ... other than the Carrier." Moreover, as explained above, the only logical meaning of "persons by whom Carriage performed" is "persons by whom

Wilhelmsen's duties under the contract of carriage are performed." *See Wemhoener Pressen v. Ceres Marine Terminals, Inc.,* 5 F.3d 734 (4th Cir.1993); *see also Colgate Palmolive Co. v. M/V Atlantic Conveyor,* 1996 WL 742861, 1997 A.M.C. 1478 (S.D.N.Y. 1996).

■ Plaintiff also argues that Clause 6 is ambiguous because it appears to be missing the word "is" before the words "performed or undertaken." But the fact that clarity of language is important in a Himalaya Clause does not mean that a court cannot apply common sense in assessing the parties' intention. In this case, the omission of the word "is" appears to have been a mere typographical error. Plaintiff does not suggest any other possible reason for the parties' failure to include it, and its omission does not alter the overall meaning of the clause in any way. *See id.* at *6–*7.

■ Plaintiff's final argument is that Maher has not established that it had a contractual relationship with Wilhelmsen.[5] In order for a stevedore to receive the benefit of a Himalaya Clause as a "subcontractor," it is necessary that there be a contractual relationship between the stevedore and the carrier. *Mikinberg v. Baltic Steamship Co.,* 988 F.2d 327, 333 (2d Cir.1993). A contractual relationship is essential because "[o]therwise, any transporter in the flow of commerce would be automatically protected by a single bill of lading regardless of its contractual privity with the shipper or carrier." *Id.* The Second Circuit has refused to permit Himalaya Clauses to be used to extend limitations of liability "to indefinite and unforeseeable defendants who may have only an attenuated connection to the 'carriage of goods by sea.'" *Id.*

Maher has submitted three documents in support of its claim that it was acting pursuant to a contract with Wilhelmsen. First, Maher has submitted an agreement between Atlantic Container Line ("ACL") and Maher dated February 22, 1990, pursuant to which Maher purchased Atlantic Coast Stevedores, Inc. ("ACE"). (Ex. A to Kearns Aff.) The agreement contemplated that Maher would take over the then-existing stevedoring contract between ACS and Wilhelmsen. The second document provided by Maher is a stevedoring contract between Wilhelmsen and ACS that states: "[t]his contract will enter into force on October 1, 1989 and will remain in force until November 30, 1990.... If the parties elect to continue the contract beyond such date, the contract will remain in force indefinitely subject to the right of either party to terminate it on sixty (60) days notice." (Ex. B to Kearns Aff.) The third document submitted by Maher is a letter dated April 18, 1990, from Peder Lie, Operation Manager of Wilhelmsen, to William Augustinus, Executive Vice President of Maher. The letter states that "Maher Terminals have agreed to honor all ACS' Stevedore Agreements for the remainder of the contract year. Based on the above, Wilhelmsen Lines A/S has agreed to transfer all activities from ACS to Maher May 1st 1990." (Ex. C to Kearns Aff.)

These documents together demonstrate that in 1990, ACS assigned its stevedoring contract with Wilhelmsen to Maher and that Maher was then in a contractual relationship with Wilhelmsen. However, Maher has not submitted any evidence to suggest that the contractual relationship was still in existence in 1993, when the events at issue in this case occurred. It may be that there was a contractual relationship in 1993 but that no separate written agreement exists. But Maher has not submitted an affidavit or other evidence to suggest that the 1990 contract continued in force without further written agreement. Although it seems likely that Maher acted pursuant to a contract, on a motion for summary judgment, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences

---

5. Plaintiff argues not only that Maher must have a contract with Wilhelmsen, but that the contract must specifically state that Wilhelmsen will give Maher the benefits of the limitations in the bill of lading. This argument is based on foreign law. *See Saint John Shipbuilding and Dry Dock Co. v. Kingsland Maritime Corp.,* 1984 A.M.C. 568 (Can. Fed. Ct. App.); *Midland Silicones, Ltd. v. Scruttons, Ltd.,* [1961] 2 Lloyd's Rep. 365 (H.L.). I decline plaintiff's invitation to extend United States law to incorporate such a requirement in this case.

against the moving party." *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993) (citation omitted). Applying that standard, I find that there is a genuine issue of material fact as to whether Maher's acts as stevedore were performed pursuant to a contractual relationship with Wilhelmsen. Accordingly, both motions for summary judgment on the issue of Maher's entitlement to the $500 package limitation are denied.

Nippon argues that the reason there is an incomplete factual record on the issue of Maher's relationship with Wilhelmsen is that Maher has repeatedly failed to provide Nippon with discovery material as ordered by the court. Nippon moves pursuant to Fed. R.Civ .P. 37 for an order designating certain facts as true and precluding defendants from introducing evidence on the issue, and asks that its motion for summary judgment be granted on that basis. The motion for Rule 37 sanctions is denied at this time. Counsel for Nippon and Maher are directed to appear for a discovery conference on October 31, 1997 at 3 p.m. in Courtroom 14A.

### Conclusion

For the foregoing reasons: (1) Wilhelmsen's motion for partial summary judgment limiting its liability to $500 per package is granted; (2) Maher's motion for partial summary judgment limiting its liability to $500 per package is denied; (3) Nippon's motion for summary judgment or partial summary judgment is denied; and (4) Nippon's motion pursuant to Fed.R.Civ.P. 37 to designate certain facts as true, to preclude defendants from introducing evidence on certain issues and to require defendants to pay Nippon's expenses is denied.

SO ORDERED.